## AYRAULT *vs.* CHAMBERLAIN and WILLIAMS.

33  229
127a 559

When the action is upon a promissory note, and the plaintiff's right of action is admitted upon the record, and the issue to be tried arises upon affirmative matter of defense—as usury—set up in the defendant's answer, the *onus probandi* is upon the defendant, and he has the right to begin, on the trial.

The object of an opening of a case to the jury is to state, briefly, the nature of the action, the substance of the pleadings, the points in issue, the facts and circumstances of the case, and the substance of the evidence to be adduced in its support.

The counsel for the plaintiff, in opening, may also state the nature of the defense, if it appears upon the record. But further than this, he ought not to go; *it seems.*

Each party should be confined to a legitimate and proper opening of *his own* case; the plaintiff's counsel to a statement of his cause of action, and the defendant's counsel to a statement of his answer to the plaintiff's case, and the evidence he proposes to give to sustain it; and in such opening should not comment, in the way of summing up, after the English manner, upon the plaintiff's evidence, any further than is essential to a proper understanding by the jury of the defendant's evidence.

After a witness has stated that at the time the note in suit was executed there were six others executed, and that they pertained to a loan of money, it is not improper to ask him whether the several notes belonged to one or to different transactions; the question merely requiring him to state the *facts* and not calling for an answer in the affirmative or negative, nor for the *opinion* of the witness.

Where, in an action upon a promissory note, the defense of usury was set up, the defendants alleging that a certain note for $4000 was given by them as a usurious premium for a loan of money; *Held* that it was not erroneous to ask one of the makers, what the $4000 note was given for.

And the answer of the defendants alleging that the $4000 note was in form given for a pretended interest of the payee in a purchase of real estate, which interest had in fact ceased to exist; yet that in fact it was given as a usurious bonus for a loan of money; and there being evidence tending to prove those allegations; while the plaintiff insisted that the testimony showed the interest of the payee had not ceased to exist, but was valid and subsisting when the note was given; *it was held* that it was proper for the judge to submit the question of fact thus raised, to the jury, instead of directing them to find a verdict for the plaintiff.

*Held also*, that it was not erroneous for the judge to charge the jury that if, at the time of making the loan for which the note sued on was given, the plaintiff had already made up his mind not to take the interest in the purchase which it was optional with him to take, and that the makers of the note in suit and of the $4000 note understood this, and instead of the transaction being a real one of bargain and sale that ceremony was resorted to by the

parties merely as a cover for a usurious loan, as a pretext to enable the plaintiff to get more than legal interest for the use of his money, then the whole transaction would be usurious and void; it being a question of fact for the jury, what was the real transaction, and what was the intention of the parties.

An answer should be as full and complete as a special plea was required to be, under the old system of pleading.

When there are several separate answers, each must stand or fall by itself, and cannot be helped out by another, except by an appropriate reference thereto.

ACTION on a promissory note made by the defendants Williams and Chamberlain, with two others as sureties, dated 5th July, 1854, for $6000, payable 1st July, 1857, with interest annually, to the order of the plaintiff, at the Metropolitan Bank, New York. Defense, usury, which, as the defendants alleged, consisted in the giving of a note to the plaintiff for $4000, at the same time the note in suit was given, as a bonus or premium for a loan of $27,000. The cause was tried at the Livingston circuit in January, 1860, before Judge JOHNSON and a jury. It appeared on the trial, that in the forepart of the year 1854, Williams and Chamberlain were engaged in negotiations with Silas S. Stone, for the purchase from him of real estate in Cleveland, at $120,000, or thereabouts, subject to $60,000 incumbrances, and that to enable them to make such purchase, they applied to the plaintiff for a loan of money, and in April, 1854, he advanced them $15,000 on their notes at 9, 12 and 15 months. At the time of this advance Chamberlain agreed that the plaintiff might have a quarter interest in such purchase, on assuming his proportion of the purchase money and incumbrances, if he should choose to do so by 20th June, 1854. This agreement was in writing. It was claimed by the defendants, on the trial, that at the time of making this advance, it was agreed by the parties that the rate of interest·to·be paid by the defendants should be from 10 to 14 per cent, but this was denied by the plaintiff. In June, and before the 20th, the plaintiff not having been .to Cleveland to see the land, his right to take an interest in the purchase was, at his request,

extended by the defendants by parol, till in July. On or about the 25th of June, 1854, the defendants applied to the plaintiff for more money, and on the same day, or the next, the plaintiff lent to the defendants the further sum of $12,000, for which they gave two notes dated in July, one of which is the note in suit. After the defendants applied, and before the terms of the loan were agreed upon, the defendants, as the plaintiff alleged, purchased of the plaintiff his right to take an interest in the Cleveland contract at the price of $4000, for which they gave their note payable in four years. It was claimed by the defendants that this advance and the advance made in April, were parts of one and the same transaction, and constituted but one loan, and that the loan was usurious on two grounds : first, the alleged agreement in April to lend at from 10 to 14 per cent interest; and second, the agreement to give the plaintiff, in addition to 7 per cent interest, the right to take one-fourth of the Cleveland purchase. The plaintiff claimed that the two advances were distinct loans, in no way connected with each other, and that there was no agreement to lend at 10 to 14 per cent. The defendants further claimed that the loan of $12,000 in July was usurious, on the ground that the $4000 note was given as a bonus for the loan, and that the transaction respecting the plaintiff's right to take an interest in the Cleveland purchase was a mere device to cover usury. And they alleged in their answer that the special feature of the transaction which rendered it usurious, was, that before the agreement in June, the plaintiff *had declined to* take an interest in the purchase, and his *right to do so had ceased to exist.* The plaintiff claimed that at the time of the agreement in June, he had a valid subsisting right to take one-fourth of such purchase, which was the subject of bargain and sale, and that the sale of it was the consideration of the $4000 note. There was no question in the case but that if such right existed, it was worth what the defendant agreed to pay for it.

After the empanneling of a jury, the defendants' counsel

claimed that by the pleadings the affirmative of the issue and the burden of proof rested upon them, and that they had the right to open and close. The court ruled the contrary, and the defendants' counsel excepted. The plaintiff by his counsel then proceeded to open his case to the jury, and after stating the contents of the note set out in the complaint, began to state briefly the defense set up in the defendants' answer, with a view to open to the jury the evidence of the plaintiff in reply. To this the defendants' counsel objected, on the ground of irregularity, and on the ground that the plaintiff in his opening has no right to go beyond the case alleged in his complaint, or to state the evidence he expects to give in reply to the defense set up in the answer. The objection was sustained by the court, and the court held and decided that the counsel for the plaintiff had no right to state to the jury the facts he expected to prove in reply to the defense set up in the pleadings. The plaintiff's counsel excepted to the ruling. The note in suit was then offered and received and read in evidence, and the amount due thereon proved.

At the close of the defendants' testimony the plaintiff's counsel asked the court to direct the jury to find a verdict for the plaintiff, on the ground that the only usurious agreement alleged in the defendants' answer was, that the $4000 note was in form given for a pretended interest which had ceased to exist; but was in fact given for the loan of money; whereas the testimony of the defendants showed that the right in question had not ceased to exist but was valid and subsisting when the note was given. And there was no allegation in the answer, and no evidence in the case, but that such interest was of the value of $4000. And that the defendants had failed to establish a defense. The court declined so to rule, and denied the motion, and the plaintiff's counsel excepted.

The jury rendered a verdict for the defendants, and the judge ordered a stay of proceedings, and that the case be heard on exceptions, at the general term, in the first instance.

Ayrault *v.* Chamberlain.

*James C. Smith,* for the plaintiff.

*H. R. Selden,* for the defendant.

*By the Court,* E. DARWIN SMITH, J. In the case of *Huntington* v. *Conkey,* (*ante, p.* 218,) we have decided in a case like this, that when the action is upon a promissory note and the plaintiff's right of action is admitted upon the record, and the issue to be tried arises purely upon affirmative matter of defense set up in the defendant's answer, the *onus probandi* is upon the defendant, and that he has the right to begin, on the trial. The ruling in that case, at the circuit, was the same as in this, that the plaintiff was entitled to begin, but the result was different on the trial. In that case the plaintiff had a verdict, and in this the verdict was in favor of the defendants. The error in that case was therefore available to the defendant. In this case it is not, for, being in the plaintiff's favor, it obviously can be no ground to him of complaint or objection. But the counsel for the plaintiff claims that the circuit judge erred in holding that the plaintiff's counsel in opening the case to the jury had not the right to state the facts he expected to prove in reply to the defense set up in the answer. If this were otherwise error, the objection necessarily falls with the decision of the question that the plaintiff was not entitled to open to the jury, and that it was error to allow him to begin. But if the plaintiff had the right to begin, I think no error was committed, at least none ordinarily reviewable. The object of an opening is to state, briefly, the nature of the action, the substance of the pleadings, the points in issue, the facts and circumstances of the case, and the substance of the evidence to be adduced in its support. And the counsel for the plaintiff, in opening, may also state the nature of the defense, if it appears upon the record. Further than this, under our practice I think the plaintiff's counsel ought not to go. Under the English practice it is said by Chitty, (3 *Chit. Gen. Prac.* 880,) "that the opening counsel may

state, by way of anticipation, the expected defense, with a statement of the grounds on which it is futile, either in law or justice, and the reason why it ought to fail." And Archbold says, (1 *Arch. Prac.* 191,) also, that "he may state the evidence by which he can disprove it." This practice of anticipating the defense grows out of a peculiarity in the English mode of trial, that does not prevail with us. According to this practice the plaintiff may, and in some cases has been required to give his whole evidence to meet the anticipated defense before he closed. He must therefore, in such case, necessarily open fully in respect to such defense, that his testimony may be the better understood ; and he is not at liberty to reply, unless the defendant gives evidence. (3 *Chit. Gen. Prac.* 906, *and* 909. 3 *Car. & Payne,* 75.) The defendant may make such defense as he can, on cross-examination of the plaintiff's witnesses, and then sum up fully and preclude the plaintiff from a reply. (*Id.*) In an action for libel, for instance, the plaintiff may give all his evidence to defeat the justification, before he rests ; (*Brown* v. *Murray, Ryan & Moody,* 254 ;) and in such case it would be necessary to open in respect to the justification. It is in reference to this practice, upon trials in England, that Judge Nelson, in *Morris* v. *Wadsworth,* (17 *Wend.* 118,) says, " This or some other reason induced Lord Ellenborough, at the circuit, to go to the unreasonable length of requiring counsel for the plaintiff to include in his opening the facts in reply to any distinct answer to the action which appeared on the record by way of plea or notice, without waiting to see whether such defenses could be proved or not." (*And see Lacus* v. *Higgins,* 3 *Starkie,* 178 ; *and* 9 *Car. & Payne,* 362 ; 38 *Eng. Com. Law.* 115.) Our rule is much more rational and practical. We do not require, and I think should not allow an opening in respect to the defense, except in an incidental way, by a brief statement of its general character ; for it is obviously better and most judicious, and many times will be a saving of much time by waiting, as

Judge Nelson says, " to see whether the anticipated defense will be really set up, or attempted to be proved." And for the same reason the English practice of commenting fully upon the plaintiff's evidence by the opening counsel for the defense, does not prevail with us. There is no reason for it under our mode of trial. But in any point of view, the manner and general character of the opening by the plaintiff's and defendant's counsel must be to a great extent under the control and within the discretion of the judge at nisi prius, and with the exercise of that discretion I cannot think a court of review ought to interfere, except a case were presented of abuse or arbitrariness, such as I think will very rarely occur. In such a case, undoubtedly, as Judge Nelson says in the case of *Morris* v. *Wadsworth*, (*supra*,) " when the rights of the parties by reason thereof have suffered, the court of review would undoubtedly interfere." Under our practice, unlike that in England, after the whole testimony has been given, the counsel for both parties have the opportunity and the right fully to discuss it, and comment upon it to the jury, and I think, therefore, that each party should be confined to a legitimate and proper opening of his *own case;* the plaintiff's counsel to a statement of his cause of action in the manner above stated, and the defendant's counsel to a statement of his answer to the plaintiff's case and the evidence he proposes to give to sustain it ; and in such opening the defendant should not comment in the way of summing up, after the English manner, upon the plaintiff's evidence, any further than is essential to a proper understanding by the jury of the defendant's evidence. (*Goss* v. *True*, 21 *Verm. R.* 439. *Bedell* v. *Powell*, 13 *Barb.* 184.)

In this case, I think the discretion of the judge was properly exercised. But certainly the plaintiff could not be injured by the ruling, for he had the general right given him, and he exercised it, of making the last address to the jury upon the whole case.

The question put to the defendant Chamberlain, " Please

state to the jury whether these notes belonged to one or different transactions," I do not think was objectionable. It asks him to state the *facts.* It did not call for an answer in the affirmative or negative, nor did it ask, as urged, for the opinion of the witness. But if the question were objectionable in form, the evidence given in response to it was entirely proper. And the question put to the witness Williams, " What was the $4000 note given for," I think, also, was entirely proper. It asked him for a *fact*—what was the consideration of the note. It was his own note, and he must know, and was entitled to state what was its actual consideration. This, I think, he might state, as he did, without going into the details of the transaction, and leave the defendants on cross-examination to inquire about the particular facts connected with the giving of the note.

The power of attorney from the defendants to the witness Stone, I think was properly received, as was the copy, of the plaintiff's teller, Kelley. The exceptions on these points were not indeed pressed, upon the argument.

The next exception relates to the refusal of the judge to take the case from the jury, at the close of the defendant's evidence. The point presented to the court, at the circuit, and to which this exception relates, was there presented as a question of evidence and variance. It was claimed that the $4000 note appeared by the answer to have been given for a pretended interest which had ceased to exist, but was in fact given for a loan of money ; whereas the testimony of the defendant showed that the right in question had not ceased to exist, but was valid and subsisting when the note was given. On the question whether the evidence made out a case to go to the jury independently of the form of the answer, I think the decision right. There was evidence given at that stage of the trial which I think made it the duty of the judge to submit the question to the jury whether the $4000 note was not given in fact as a bonus for the loan and forbearance of the $27,000, notwithstanding the form of the transaction was

Ayrault *v.* Chamberlain.

that of a sale of an interest in the lands in Cleveland. But such proof, it seems to me quite clear, did not establish either of the answers in the case ; and if the point had been made, and the defendants' counsel had been called upon to designate which answer they deemed proved, they could have been constrained to admit that there was no single ·answer upon the record to which the proof could be applied, and the motion of the defendants' counsel should have prevailed. But it is quite apparent, I think, that the case was tried upon the facts set up in the different answers, and upon the assumption that the defendants might prove a defense of usury under the answers, irrespective of the form of the pleadings. They are in the form of, and are numbered as, 14 separate answers. If the question had been raised upon demurrer, not one of these answers, as separate answers, could have been sustained. There is not in the whole series one complete single answer ·to the complaint. Considered as special pleas setting up usury, not one of them would have been held good, under the old system of pleading ; and every answer should be as full and complete as a special plea was required to be. It was a fundamental rule of special pleading that each plea must contain a sufficient answer in law to the whole gravamen of the cause of action, so far as it professed to answer the declaration. (*Gould's Plead.* 358, § 98.  1 *Chit. Plead.* 523.)  And each plea, when there were several, must stand or fall by itself. (*Saund. Plead.* § 278.)  And one could not help out another, (2 *Mass. Rep.* 542 ; 1 *Chit.* 563,) except by an appropriate reference thereto. Not one of these 14 answers will stand the test of these rules, and not one of them makes out a case of usury, by itself, if they are to be regarded as several answers. But these 14 answers, though commencing as separate answers and numbered as such, are in fact but parts of one connected transaction, and each, with some repetition and slight variation, states a distinct part of such transaction. Taking them thus, and tacking them together, they make out or allege two cases or defenses of usury. I

think they must have been treated by the counsel, and by the court, at the circuit, as though they in effect comprised one entire answer. As they were so treated at the circuit, and have been on the argument here so treated, or rather no point made in respect to their sufficiency in point of form, or their character as separate answers, I think it would be hardly proper, after the trial and verdict, to treat them otherwise. If the proper objection had been made at the circuit, the answer might have been amended there, or the case might have gone over the circuit upon terms, with leave to the defendants to put their answer in proper form. No surprise, I think, could have been alleged against their amendment on the spot, as all the substantial allegations of usury are spread upon the face of the pleadings. It seems to be the policy of the law, and the practice now at the circuit, to try causes upon their real merits, disregarding all mere immaterial questions of form, and after a fair trial upon the merits to conform the pleadings to the case made in the evidence, when no injustice will be done, and all the facts essential to the full and fair determination of the rights of the parties were in fact put in issue by the pleadings. (*Corning* v. *Corning,* 2 *Seld.* 97. *Hall* v. *Gould,* 3 *Kern.* 127. 28 *Barb.* 441, 602. *Code,* §§ 170, 171, 173.) The answers, to and including the 7th, set up that part of the transaction between the parties which took place on the 3d of April, 1852, and allege usury in the loan of $15,000 then made. This part of the defense was unsupported by the evidence, and the circuit judge so held, in the submission of the case to the jury. The 8th, 9th, 10th, 11th, 12th, 13th and 14th answers allege the usury to consist in the giving and taking the $4000 note on the 26th of June, 1854, for the forbearance of the said $15,000, and a further loan then made of $12,000. In the 8th answer it is alleged that after the plaintiff had declined to take an interest in the purchase of the Cleveland property, he made this further loan of $12,000, and extended the time for the payment of the $15,000 for the $4000 note, over and above

legal interest.   The 10th answer distinctly avers that this $4000 note was given to the plaintiff to secure the payment to him of that sum for the use of the said $27,000 so loaned and advanced, and for no other purpose or consideration ; and in the 12th answer it is also averred that it was agreed between the parties that the $4000 note should be given to the plaintiff for his interest in the contract of purchase of the said real estate, but that at that time the plaintiff had no interest in the purchase whatever, and that he had declined to take any interest therein as offered and proposed to him ; that the said agreement to have the $4000 note regarded as given for the interest of the plaintiff in such purchase, was colorable merely, and intended as a device to cover the said usurious agreement. The evidence of the defendants Chamberlain and Williams certainly tended to prove these allegations, and in the aspect in which the question was presented and considered at the circuit, I think the circuit judge would hardly have been justified in overruling the defense and taking the case from the jury.

The remaining question relates to the charge to the jury, or the exception to the charge.   The point, as made by the counsel for the plaintiff, is that the judge erred in submitting to the jury the question whether at the time of the transaction in June the plaintiff had already made up his mind to take that interest, and the defendants understood this, and instead of the transaction being a real one of bargain and sale, that ceremony was resorted to by the parties merely as a cover for a usurious loan, and as a pretext to enable the plaintiff to get more than legal interest for the use of his money, and in saying to them that then the transaction would be usurious.   It seems to me that the charge upon this point was fully warranted by the evidence.   Chamberlain testified that at the interview when the $12,000 was loaned, " the plaintiff declined to take an interest, or he did not take it. It was spoken of then, and I heard in some way that he would not take it."   If the $4000 note was in fact given for

Ayrault v. Chamberlain.

the plaintiff's interest, or option to take an interest, in the purchase of the Cleveland property, there could be no usury in the transaction, and the judge expressly so charged. But it was a question of fact for the jury, what was the real transaction ; whether it was a case of bargain and sale of this interest, or that process or form was used as a mere pretense or cover for usury. This fact was to be determined by the jury, from the whole transaction—from the acts and obvious understanding and meaning of the parties, as well as from their language. Usurious transactions are mostly veiled under some guise or cover—some apparently fair contract or arrangement. It is the province and duty of a jury, in such cases, to look behind the veil, at the real nature of the transaction, and to ascertain the true intent and meaning of the parties. This they may do from what is manifestly to be implied from what is said and done, as well as from what is actually spoken. It doubtless would not be sufficient nor proper for the jury to imagine what were the secret purposes, in his own mind, of the plaintiff, without any communication of such purposes to the defendants. But the charge instructs the jury that "if Mr. Ayrault had already made up his mind not to take an interest, and that Chamberlain and Williams *understood this*," and instead of the transaction being a real one of bargain and sale, that ceremony was resorted to by the *parties* as a cover, then that it was usury. This instruction is explicit. It does not leave the jury to impute usury upon mere suspicion in respect to secret resolves or purposes of the plaintiff confined to his own breast, but it requires that that purpose be understood by the opposite *parties*, and the form of a sale was resorted to and made as a mere pretext or cover by the *parties*. This necessarily includes all the parties to the transaction. Williams swore expressly that "the consideration of the $4000 was the loan of the $27,000 extra, and there never was any other or different consideration for that note." Chamberlain relates the transaction, and states that he figured up the interest of the money loaned. That

when the proposition to sell their interest in the purchase was made, "he then saw what was up, and thought more than he said," &c. The whole transaction appropriately belonged to the jury, and I cannot think that there was any substantial error in the charge in this particular, or in the matter referred to in the next and last exception. It was a case purely of fact. It was for the jury to say what the real nature and character of the transaction actually was, as disclosed in the evidence.

Upon the whole case, I can see no substantial error that would make it proper for us to grant a new trial.

New trial denied.

[MONROE GENERAL TERM, December 3, 1860. *Smith, Johnson* and *Knox,* Justices.]