JAMES W. ELWELL and others, Appellants, v. MOSES CHAMBERLIN, JR., Respondent.

Where the defendant holds the affirmative of all the issues made in the pleadings, and opens the case by calling the first witnesses, he is entitled to the closing address to the jury.

*It seems*, that the party who alleges the affirmative of any proposition, or of an issue of fact, must prove it; and the party who has to maintain or prove the affirmative, must begin the evidence.

The credit of one person may be rendered available to another by gift, sale, or exchange, which is virtually a sale; and if not intended as a cover for usury, it may be the subject of a consideration to be agreed upon between the parties, the same as in the disposition of other commodities.

The principals cannot enjoy the benefits of a bargain made by their agent, without adopting the instrumentalities by which he consummated it.

THIS action was brought in the Superior Court, of the city of New York, to recover the amount of a check given by the defendant, made and dated October 14th, 1856. The plaintiffs were the owners and holders of a promissory note made by the firm of Lane, West & Co., dated June 20th, 1856, and which was received by them from a broker, employed by that firm to raise money thereon, in exchange for the plaintiffs' note for the same amount. On such exchange the plaintiffs were allowed and received two and one-half per cent as a commission. This was the usual commission charged on similar transactions. In the early part of October, 1856, the plaintiffs put the note of Lane, West & Co. into the hands of a broker to sell, who employed for that purpose another broker by the name of Mills, and who, on the 14th of October, sold it to the defendant for $25 less than its face, taking the defendant's check for it, and he passed the same to the plaintiffs, and this action is brought to recover its amount. When Mills applied to the defendant to purchase the note, the defendant declined to make the purchase, on the ground that he had then a note of Lane, West & Co. about falling due, and had enough of their paper, but said if their note falling due October 13th, held by him and deposited in the Nassau bank for collection was paid,

then he would buy it. Mills, on the 14th of October, represented that the note of Lane, West & Co., falling due the day previously had been paid, and thereupon the defendant purchased the plaintiffs' note, and gave therefor the check in suit. The answer admitted the giving of the check, but set up as defenses, that the note sold to him, for which the check was given, was an accommodation note, and was usuriously purchased by the plaintiffs. That the defendant had purchased the same upon a usurious contract with them, and that he had purchased the same upon the faith of the representation of Mills, that the other note falling due on the 13th of October, had been paid, and that ascertaining on the morning of the 15th of October that the sum had not been paid, he offered to the plaintiffs to return the note, and demanded a return of his check, and thereupon, on its being refused, stopped payment thereof.

On the trial, the court gave to the counsel for the defendant the closing address to the jury, to which the plaintiffs' counsel excepted. Under the charge of the court the jury found a verdict for the defendant, and judgment thereon was affirmed at the General Term. (*S. C.* 4 Bosw., 320.) The plaintiffs then appealed to this court.

DAVIES, J. The first point made by the counsel for the appellants is, that the judge erred in permitting the counsel for the defendant at the trial, to have the closing address to the jury. In this the learned judge was clearly correct. It appears from the case, that the defendant opened the case to the jury by calling the first witness. He had the affirmative of all the issues made by the pleadings, and if he had offered no evidence to sustain them, the plaintiffs would have been entitled, without adducing any testimony, to have a verdict and judgment for the amount demanded in their complaint. The party having the affirmative issue upon the record, is always entitled to begin. It was conceded in this case that the defendant had such affirmative, as he began, and as it would appear without objection. It generally follows that the party entitled to commence his evidence, is

entitled to the close, and under our present system of plead-
ing, it very frequently occurs that the defendant has the
affirmative, and when he has, it has been also generally
admitted that he was entitled to open and close the case to
the jury.

Under our former system of practice, if the defendant did
not plead the general issue, but admitted upon the record
the plaintiff's cause of action, and sought to avoid it by some
affirmative defense, the rule and practice of the courts in
England prevailed in this State. (2 Dunlap Pr., 637; 1 Paine
& Duer, 522; Gra. Pr. 289.)  That rule is announced in an
authoritative and able work on the practice of the Court of
King's Bench, where the author observes: "It has been laid
down as a general rule, that the party who has to maintain
the affirmative of the issue must begin the evidence.  Where
there are special pleadings, or where a special defense is not
intended to be given in evidence under the general issue, it
may, perhaps, be more accurate to say that the party who
has added the *similiter* shall begin.  If both parties, how-
ever, have added the *similiter* to the different sets of plead-
ings, in the same cause, then the plaintiff shall begin.   *   *
When a special defense is intended to be given in evidence
under the general issue, the party shall begin who would
have been entitled to do so, if the defense had been specially
pleaded. (1 Arch. Pr., 169, 170.)  In *Jackme* v. *Hesbeth* (2
Stark. N. P., 518), it was held, that when the affirmative of
the issue lay upon the defendant he had the right to begin.
BAYLEY, J., after having consulted WOOD, B., said they were
both of them of the opinion that the defendant was entitled
to begin.  In the case of *Revett* v. *Braham* (4 T. R., 497),
the question was who was entitled to the reply, in an action
of ejectment when the lessor of the plaintiff claimed as heir-
at-law, and the defendant as devisee, and the court (upon a
trial at bar) decided that if the plaintiff proved his pedigree
and stopped, and the defendant set up a new case, which the
plaintiff answered by evidence which ultimately went to
the jury, the defendant should have the general reply, and
BULLER, J., said he had so ruled at Winchester in 1789.   The

general rule, prevailing in this country, and in England, is well stated in Bouvier's Inst. 323, § 3043, as follows: "That the party who alleges the affirmative of any proposition or issue of facts should prove it, because a negative does not in general admit of the simple and direct proof of which the affirmative is capable, and therefore the party who has to maintain or prove the only affirmative, or all the affirmatives, must begin the evidence." See, also, the case of *Huntington* v. *Conkey* (33 Barb., 218), where in the opinion of Mr. Justice E. DARWIN SMITH, the authorities are collected, and the doctrine clearly stated. In that case the action was upon a promissory note, which was set out in the complaint. The answer admitted the making of the note, and set up the defense of usury. The plaintiff in that case, as in this, was entitled to a verdict, if no evidence had been offered on the trial; and the judge at the circuit held that the counsel for the plaintiff had the right to open the case to the jury, and to reply. This the General Term held to be error, and granted a new trial.

In the case of *Ayrault* v. *Chamberlain* (33 Barb., 229), it was held that each party should be confined to a legitimate and proper opening of his own case, the plaintiff's counsel to a statement of his cause of action, and the defendant's counsel to a statement of his answer to the plaintiff's case, and the evidence he proposes to give to sustain it. And it was held improper for the counsel of the plaintiff to state the case as made by the defendant in his answer, or the evidence he expects to give in reply to the defense set up in the answer. This ruling was affirmed by this court at the June Term, 1862. There was no error, therefore, in the ruling of the judge on the trial, directing the plaintiffs' counsel to sum up to the jury before the defendant's counsel, thus giving to the latter the reply. He had opened the case to the jury, and should consequently have had the reply.

The second point, made by the appellants' counsel, that the verdict is against evidence, presents no ground for a review in this court. The Superior Court having refused to set aside the verdict, we assume it was sustained by the evi-

dence offered on the trial, and we do not look into the
evidence to see whether it is or not. That tribunal alone
was competent to examine and decide that question, and
their decision on that point cannot be questioned here.

The third point is in substance that the judge erred in his
second proposition submitted to the jury. The defendant
had insisted, in his answer, that the plaintiffs had no legal
title to the note sold to him, and that, therefore, there was
an entire failure of the consideration for his check, for the
reason that the note was an accommodation note, and had
no legal inception before it was passed to the plaintiff, and
that it was void for usury. The judge charged the jury that
if they were satisfied, on the evidence, that the transaction
of the exchange of the note of the plaintiffs for that of Lane,
West & Co., on which the $2\frac{1}{2}$ per cent commission was
charged and received by the plaintiffs, was in fact a sale of
the plaintiffs' credit, and that the commission charged was a
compensation for the sale of such credit, and that the trans-
action was not that of a loan, nor a cover for usury, then the
reservation of these commissions, though exceeding in amount
7 per cent on the face of the note of Lane, West & Co. for
the time it had to run, does not stamp the transaction with
usury, nor make that note void in the plaintiffs' hands on
that ground; otherwise, if it was a cover for usury. This
charge is unobjectionable in view of the decision of this
court in the cases of *The Dry Dock Bank* v. *The American
Life Insurance and Trust Company* (3 Comst., 344) and
*Leavitt* v. *De Launy* (4 Comst., 364). In the former case
Judge GARDNER, in delivering the opinion of the court, said:
" The credit of one person may be rendered available to
another by gift, or sale, or in any other way. This may be
done by a direct contract between the parties; as an exchange
of notes, which is the sale of one promise for another; by an
undertaking with third persons directly; or one to be used
for the benefit and according to the discretion of the donee
or vendee. Where the responsibility is incurred gratuitously,
it is, in popular language, called a loan; and when for a
consideration, a sale of credit." He adds: " It is sometimes

asked, why should a man be permitted to receive ten per cent on an exchange of notes, when if he advanced money on the same security he would get but seven. The answer is, for the same reason, that he is permitted to receive $20 for six months' use of furniture valued at $100. The one is prohibited, the other is not. No man can exchange his promise to pay $110, at the end of a year, for $100 in cash. 1st. Because he would thereby agree to refund *in kind* precisely what he had received, and this is the definition of a loan ; and the $10 must, therefore, be a compensation to the vendee for the use of the money, whatever name may be given to the transaction. This the statute forbids. The legislature has fixed the interest of money at seven per cent. This includes a compensation for the use and the risk of its repayment. Nothing more can be received by, or secured to, the vendee. The consequence is, that a promise to pay $107 one year hence, is, in law, an equivalent for $100 in money presently received, no matter whether the promise is made by a Rothschild or a pauper. This is legally true, because the legislature has so enacted. But they have not declared that a promise to pay money is money, or its precise equivalent, in any case except that of a loan. Hence upon an exchange of promises, as in an exchange of property, parties are left to their own judgment as to their relative value. They are sales, subject to the same rules, and their validity is tested in the same manner as other sales. Upon the sale of property on time, the purchase money becomes a debt, which is forborne for the period limited by the credit. The case of *Leavitt* v. *De Launy* (*supra*) is in harmony with this doctrine. The question there arose upon contracts relative to the purchase and sales of bills of exchange, and it was said, in the opinion of the court, that the most favorable aspect to the complainants was whether upon a sale of credit, made in good faith, the vendor can receive or secure to himself more than seven per cent without rendering the agreement usurious. It was said that this question was substantially decided in the affirmative in the *Dry Dock Bank case* (*supra*) and by previous adjudications, to which reference is then made. It

is not denied that a sale of exchange in form may be adopted as a cloak for a usurious loan. But the party impeaching an agreement upon that ground must by evidence remove the covering from the transaction, and exhibit it as a loan of money. A brief reference to these authorities will illustrate the principles of these decisions and the grounds upon which they were decided. In *Trotter* v. *Curtiss* (19 Johns., 160), and in *Suydam* v. *Westfall* (4 Hill, 211), it was held that a commission of 2½ per cent for accepting, in addition to interest on the money advanced, was not usurious. So when a bond and mortgage was sold for $2,600, and the bond of the vendor given to the vendee, conditioned that the mortgagor should pay $3,000, the amount of the mortgage sold, it was held that the transaction was on its face a mere sale of a chose in action, unconnected with a loan, and, therefore, not usurious *per se.* (*Rapelye* v. *Anderson*, 4 Hill, 472.)

So the sale of an indorsement, at three per cent on the amount of the note indorsed, and which was intended to be, and was discounted at the legal rate, was held to be valid. (*Ketchum* v. *Barber*, 4 Hill, 225,) affirmed in the court of errors. (7 Hill, 444.) In *More* v. *Howland* (4 Denio, 264), it was decided that the *bona fide* sale of one's credit, by way of guaranty, or by making a note for the accommodation of another, upon an exchange of notes, though for a compensation exceeding seven per cent, is not usurious, if the transaction is unconnected with a loan between the parties. And it was said, in the *Dry Dock Bank case*, that the principle of these cases applies to every engagement direct or collateral, assumed in good faith, by one man for another, for a stipulated consideration. The exchange of notes for a premium greater than the legal rate of interest is no exception to the general rule. This was, in effect, determined in *Dunham* v. *Dey* (13 Johns., 40), where Dunham reserved 2½ per cent on an exchange of notes, which was more than the legal rate of interest on the notes given in exchange for the time the same had to run, and it was left to the jury to determine from the evidence whether the transaction was a device or cover for usury; and they found, as a question of fact, that

the exchange was a mere cover for a usurious loan, and the court sustained the verdict. In *Ketchum* v. *Barber* (*supra*), the referee reported that upon a fair construction of the testimony the transaction was a mere sale of indorsements, or, in other words, the giving of a conditional guaranty of the payment of the notes for which the plaintiff received a stipulated compensation, and that there was no loan of money or of choses in action within the meaning of the statute of usury. In *Ketchum* v. *Barber* (*supra*), Bockee, senator, in the opinion of the court, says that the following is a very fair and proper test, and in strict harmony with all the adjudged cases on the subject of usury, namely, when the borrower of money or of any property, or thing in action in every contingency, pays more than the legal interest, and the lender of the money, or any property or thing in action, at the same time, directly or indirectly reserves and secures to himself a return of his principal, with more than legal interest, exclusive of any legal charge for commission or services, the transaction must be adjudged usurious, whatever may be its form. If such result is apparent on the face of the transaction, or on the facts appearing to the court, they will decide it to be usury, and it would be needless and improper to refer it to a jury to determine the *quo animo* or intent of the parties. In other cases, when such result is not apparent, the subject is necessarily referable to a jury to ascertain whether it is a fair business transaction or a shift and device to cover an usurious loan.

In the light of these authorities, the judge at the trial properly left it to the jury to determine whether the exchange of notes, and the payment and receipt of the commissions agreed upon, were a fair business transaction or a shift or device to cover a usurious loan. If the latter, then the note was void in the plaintiffs' hands, and there was consequently no consideration for the defendant's check. Or, on the contrary, if it was simply a sale or exchange of credit, then the transaction was unobjectionable and free from the taint of usury, and the note of Lane, West & Co. was a valid security in the plaintiffs' hands, and the sale of it to the

defendant vested a good title thereto in him. The requests by the plaintiffs' counsel to charge the jury presented no material qualifications to the charge as made. We have seen that the charge was literally in compliance with the doctrine of many adjudged cases, and if the request implied a departure from them, a charge in conformity would have been erroneous.

No point is now made upon the exception taken at the trial upon the first proposition submitted by the judge to the jury. We must assume that the jury found the truth of the matter stated in the third proposition to the jury, namely, that if Mills told the defendant, at the time he made the sale on behalf of the plaintiffs of the note of Lane, West & Co. to the defendant, that the other note of Lane, West & Co., then in the Brooklyn Bank for collection, had been paid, and that such statement was not true in fact, and that the defendant gave his check for the note in question, relying upon the truth of that statement and not upon other sources or means of information of his own, then the defendant was entitled to a verdict, notwithstanding Mills may have had no fraudulent intent himself in making the statement. It is not material that the plaintiffs authorized or knew of the alleged fraud committed by their agent Mills in negotiating the sale of the note. They cannot be permitted to enjoy the fruits of the bargain without adopting all the instrumentalities employed by the agent in bringing it to a consummation. They have ratified the sale by seeking to enforce payment of the check given for the thing sold. If an agent defrauds the person with whom he is dealing, the principal, not having authorized or participated in the wrong, may, no doubt, rescind, when he discovers the fraud, on the terms of making complete restitution. But so long as he retains the benefits of the dealing, he cannot claim immunity on the ground that the fraud was committed by his agent and not by himself. (*Bennett* v. *Judson*, 21 N. Y., 238.) The plaintiffs, therefore, stand in the same position as if they had made the representation or authorized it to be made, and they are equally guilty of a fraud, whether the representation was

made without knowledge of its truth or falsity, or whether at the time it was made it was known to be untrue. (*Bennett v. Judson, supra.*) It is apparent that the defendant did not intend to purchase this note unless the other was paid, and as the jury have found that he relied upon the representation of the plaintiffs' agent that it had been paid, when in truth and in fact it had not, the judge properly instructed them that if they found the representation as alleged was made, and that the defendant relied upon its truth in making the purchase, and that it was false, then they should find for the defendant. They did so find, and the judgment appealed from should be affirmed.

MULLIN, J. The appellants' counsel presents five points on which he relies to reverse the judgment. They are,

1st. That the plaintiffs' counsel were entitled to close the summing up.

2d. On the case the plaintiffs were entitled to recover. The verdict is against the weight of evidence.

3d. There was no usury proved in the case. · The burden of proving usury was on the defendant. It must be clearly proved, and cannot be presumed.

4th. The court erred in refusing to charge as requested, in each of the points excepted to.

5th. The motion for a new trial was denied by a divided court, one of the judges dissenting. The question of usury was raised on the trial, and the plaintiffs were entitled to have the jury correctly instructed on the question of usury.

The second point cannot be considered by us. We cannot review the findings of fact. The court below had power to do so. If they had done so, we have a limited power of review, but not one extensive enough to set aside a verdict as against the evidence.

The fifth point presents no question of law; and hence our examination of the case must be confined to the remaining three points presented by the counsel.

1st. Was the plaintiffs' counsel entitled to close the sum-

ming up? The court held it belonged to the defendant; and the plaintiffs' counsel excepted to the ruling.

It was said by Justice WILLARD in *The People* v. *Cook* (4 Seld., 77), that the right of counsel to address the jury is a matter resting in the sound discretion of the court, and he supports his opinion on the point, by reference to sundry cases in which the courts have either refused the right of counsel to address the court, or limited it in such a way as to show that it was a right wholly under the control of the court. If the right to address the court or jury may be altogether withheld, it would seem to follow that the order in which counsel may sum up would also be in its discretion. If it rests in discretion, it cannot be reviewed in this court.

Without stopping to inquire whether the learned judge was right in the position taken by him, an examination of the pleadings and proceedings on the trial will show that the court below was right in giving to the defendant's counsel the closing address to the jury.

The answer admits the complaint; nothing was required to be proved by the plaintiff to entitle him to a verdict. In such case the defendant is required to begin, and the party having the opening is entitled to close the argument. (Graham's Pr., 289.)

2d. Was usury proved in the case?

The answer alleges that the note for which the check in question was given was made by Lane, West & Co. to be sold in the market, and that it was handed to a broker for sale and by him transferred to the plaintiffs for their note of the same amount, and a commission of $2\frac{1}{2}$ per cent. This $2\frac{1}{2}$ per cent is alleged to be a discount of more than the legal rate of interest, and that the note was therefore usurious.

The answer also alleges that the said note was sold to the defendant for $25 less than its face, and that such sale rendered it usurious and void.

It is unnecessary to occupy time in an inquiry whether the transfer to the defendant was usurious. No court has ever permitted the usurer to take advantage of his own usurious agreement for the purpose of avoiding it, and I hope no court

ever will. While I am in favor of a rigid enforcement of the statute against usury, I am not in favor of shielding the usurer from the burthens of his contract into which his avarice has led him. (*La Farge* v. *Horton,* 5. Seld., 241.)

The question whether the transfer of the note to the plaintiff was usurious is not free from doubt.

It would seem from the evidence of Hotchkiss that Lane, West & Co. had given the note in question to Van Olinda, who gave it to the witness, who was a broker, for sale. He took it to the plaintiffs and received from them their note for the same amount and the same time to run. He gave them 2½ per cent commission for the sale, and paid it in cash, or a check. Did it because the plaintiffs' note was more saleable,— more easily converted into money. Van Olinda wanted money. The exchange of notes with the plaintiffs was on the witness' application and not on the plaintiffs'. He applied to the plaintiffs to buy the note. On cross-examination he stated that he tried to sell the note and could not. Then took it to the plaintiffs and proposed to exchange it for theirs, and then he sold the plaintiffs' note and took the money to Van Olinda. The plaintiff Elwell testifies that Hotchkiss came to him and asked him if he wanted to purchase the note. He said no. He asked if he (Elwell) would not give the firm note for the same amount and time, on the usual terms. He (E.) hesitated, but at last told him he would, and gave him the company note which was paid at maturity, and received 2½ per cent commission which is the usual charge for advances of credit. He presumed the credit of Lane, West & Co. to be good till he went to Hotchkiss' office that morning.

What was this transaction between Lane, West & Co. and the plaintiffs? Was it a sale of the credit of the latter to the former, or was it in substance and effect, a loan of money? It is considered that if it was a sale of credit it is not usurious, but if a loan of money, then the transaction was usurious and void. (*Dry Dock Bank* v. *American Life Insurance and Trust Company,* 3 Comst., 344; *Schemerhorn* v. *Tolman,* 4 Kern., 93; *Leavitt* v. *De Launy,* 4 Comst., 364.)

If Lane, West & Co., or their agent, had taken their note to the plaintiffs and transferred it to them for the face of it in money, less a commission of $2\frac{1}{2}$ per cent, it would have rendered the note void for usury. Why? Because the courts say it is a loan of money, and if the amount paid or agreed to be paid for the use of the money is more than at and after the rate of seven per cent per annum, the security is usurious and void. (*Clark* v. *Sisson*, 22 N. Y., 312; 1 Hill, 9; 2 Denio, 621; 8 Cow., 669.)

In *Clark* v. *Sisson* (*supra*), the action was against the acceptor and indorsers of a bill. It was proved that the acceptance was without consideration, and made to enable the drawer to raise money. The plaintiff discounted the bill at a usurious rate of interest. Judge COMSTOCK says: "It (the dealing in regard to the bill) was a loan, because it could not be anything else. The plaintiffs could not purchase a bill which had no legal existence until it came to their hands." Judge SELDEN (*Schemerhorn* v. *Tolman*, 4 Kern., 116), after remarking that it was not usury for a bank to pay to the holder of a note discounted by it its own bills at par, but with less than par in the market, does not constitute usury, proceeds to say, *prima facie*, at least, such a transaction is a loan, because a bank cannot make sale of its own promises to pay, which are of no value so long as they remain in the possession of the bank. It is not until they have passed into other hands that they acquire a value and become possessed of the attributes of property.   *   *   *
It is plain that the giving one's own promise to pay to another, for any consideration, cannot be brought within the definition of a sale. It is impossible to call such a transaction a transfer of property from one person to another, as a promise is not property in the hands of the promissor. *
* * If there is a sale, it is made by the same acts which create the thing sold. This is not only repugnant to every just definition of a sale, but logically absurd.

If, then, the transfer by Lane, West & Co. of their note to the plaintiff at a usurious rate of interest renders void the note for usury, and they could not sell their note because it

was not the subject of sale, it becomes necessary to inquire whether the transaction can be sustained on any other theory.

It is said that because the plaintiffs delivered their own note to a broker in exchange for Lane, West & Co.'s note the transaction was not affected by usury; that the transaction was in effect a sale of the plaintiffs' credit, which may be sold at any price without subjecting the transaction to the imputation of usury.

If it be true that Lane, West & Co. could not sell their note, because it was not the subject of sale, it follows that the plaintiffs could not sell theirs to Lane, West & Co. I am unable to understand how there could be an exchange of one note for another, by which either could obtain for his note more than the face of it and legal interest and escape the laws against usury. Each note, after transfer, is supported by a valid consideration, because the promise of the one party is a good and sufficient consideration for the promise of the other. But the question is not whether there is a valid consideration (because all usurious contracts have a consideration to sustain them), but the question is whether the transfer by way of an exchange takes them out of the operation of the usury laws.

In Chitty on Contracts, 374, it is said the difference between a sale and exchange is this, the former is a transferring of goods for money, the latter for goods by way of barter. In either case the same rules of law are prescribed for regulating the transaction.

In Domat's Civil Law, exchange is defined to be " a covenant by which the contractors give to one another one thing for another, whatever it be, except money; for in that case it would be a sale."

In exchanges of one kind of chattels for another, it is impossible to establish usury, because chattels have no fixed value; parties may call the value of them what they please, and so long as there is no standard by which to ascertain and determine their real worth, it cannot be said that usury is taken, even if it applied to any dealing except loans.

An exchange of notes must be governed by the same rules

as the exchange of chattels, because an exchange is not a loan, although it may be a cover for a loan. But when A delivers his note for $100, payable three months from date without interest, to B, and receives in exchange therefor B's note at three months without interest for $90, it is difficult to understand how this can be considered an exchange and not a loan. The note of A, in the case supposed, is presumed to be worth the number of dollars agreed to be paid by its maker. The same presumption applies to the note of B, and the court would award in the event of non-payment, the same amount of damages on each note. A promissory note then has a fixed value in contemplation of law, and is thus distinguished from chattels; and it is this distinction which renders the transaction in the one case usurious, and in the other not.

Judge SELDEN in *Schemerhorn* v. *Tolman (supra)*, illustrates the principle thus: Whenever the question of usury arises, no value can be put upon the promises or obligations of either party different from that which they import on their face. This is universally conceded in respect to the obligations of the borrower. If a lender advances $90 in money, and takes a note for $100 with interest, he cannot defend himself against the charge of usury by showing that the responsibility of the borrower is doubtful, and that his notes would be worth less than par in the market. The question is to be determined on the face of the transaction. It is usury *per se*. Upon what principle, then, can one who instead of the $90 in money, gives his note for $90, allege that the note he takes in return is worth less than its face. * * * So if the borrower choose to receive the promissory notes of the lender instead of money, he cannot, I think, upon the question of usury, take the ground that such notes are depreciated in the market. If he gives his own obligations for no greater nominal amount than that for which he receives the obligations of the lender, there can be no usury. To constitute usury, the lender must take or receive, or contract to take or receive more than the legal rate of interest; and such a project cannot be predicated upon the assumption that he will fail to redeem his own obligation.

It would seem to follow, and such was the opinion of Judge
SELDEN in the case cited, that while the exchange of notes is
called an exchange as distinguished from a loan or sale, yet
for the purposes of the usury law it must be considered one
or the other, and it resembles a loan more than a sale. The
parties exchanging notes must have in contemplation the
raising of money, and each desires the note of the other in
order to enable him the more conveniently to obtain it, and
it is in legal effect a loan of the amount evidenced by the
face of the note. The amount of each note is as definitely
ascertained as if the parties were exchanging bank notes, or
gold, for silver coin. Chattels to which, properly speaking,
the term exchange applies, has no such value, and hence no
means is furnished to determine which has the best of the
bargain.

Judge GARDNER, in the *Dry Dock Bank* v. *The American
Life Insurance and Trust Company* (3 Comst., 344), declares
it as his opinion that usury cannot be predicated of an ex-
change of notes, no matter what the terms of exchange may
be. It may, however, he considers, be shown that such an
exchange is a cover for usury. The opinion of Judge GARD-
NER, in respect to the point alluded to, was not necessary to
a decision of the case.; yet it may be said that if an exchange
of notes may be, *per se*, usurious, as when they are not for
the same amount, or at different rates of interest, the plain-
tiffs' obligations given to the defendants were, *per se*, usurious.
But the court refused to follow Judge CADY, who was of the
opinion that the exchange was usurious; and Judge GARD-
NER was designated to write an opinion repudiating that view
of the law, and deciding the case on the ground that the
transaction was a cover for usury.

The case of *Schemerhorn* v. *Tolman* presented a state of
things substantially similar to that of the *Dry Dock Bank*
v. *The Life Insurance and Trust Company;* and in that
Judge SELDEN, as I have shown, repudiates the whole reason-
ing of Judge GARDNER, and declares it to be his opinion that
such an exchange as either of the cases presented was, *per
se*, usurious, and I do not find that the other judges dissented

from him on this point. But in regard to his opinion, it may be said that the point under consideration need not have been decided in order to dispose of the case, and that each is *obiter*. But I think the point was fairly before the court in each case, and in each it was decided differently.

If the question is to be considered an open one, it seems to me when one party to an exchange of notes, receives from the other a note by which he is entitled to demand either a larger amount of principal and interest, or a higher rate of interest, or a commission which is greater than the interest would be for the time the note has to run before maturity, the transaction is *per se* usurious.

When the transaction is, on its face, a mere exchange of one note for another, at the same rate of interest and payable at the same time, it is not *per se* usurious, and it is incumbent on the party alleging usury in the transaction to prove it. But if I am wrong in this, and if, in all cases of exchange, it is incumbent on the party assailing the transaction to prove that it was a mere cover for usury, it then becomes necessary in this case to inquire whether the question was submitted to the jury with such instructions as the law required to be given, and as the plaintiffs had the right to require to be given to the jury on the question of usury.

The court below instructed the jury that if they were satisfied, on the evidence, that the exchange of notes between the plaintiffs and Lane, West & Co., for which the plaintiffs charged a commission of $2\frac{1}{2}$ per cent, was in fact a sale of the plaintiffs' credit, and that the commission charged was a compensation for the sale of such credit, and the transaction was not a loan nor cover for usury, then the reservation of a commission, though exceeding seven per cent for the time Lane, West & Co.'s note had to run, does not stamp the transaction with usury, nor make it void in the plaintiffs' hands on that ground. The defendant's counsel excepted to this branch of the charge, but the plaintiffs' counsel did not. The instruction must therefore be taken as correct, and the finding in favor of the plaintiffs disposes of the question of

usury. The transaction is found to be a loan or a cover for usury.

If the plaintiffs have any escape from the consequence of this finding, it must be because of some error of the court in refusing to charge as requested by their counsel. The first request was to charge that an exchange of notes for a commission of 2½ per cent on the face of the note is not within the statute of usury. The court refused to alter his charge, and the plaintiffs' counsel excepted.

In my opinion the court should have charged that such a transaction was usurious. But upon no principle could the proposition, as stated by the counsel, be given to the jury as the law of the case, without the qualification that the transaction was not in fact a loan or a cover for usury.

And within several cases which have never been questioned, the commission charged must not exceed the interest for the time the note has to run. (*Dey* v. *Dunham*, 2 Johns. Ch., 182; *Fanning* v. *Dunham*, 5 id., 122; *Dunham* v. *Dey*, 13 Johns., 40.)

The next request of the plaintiffs to charge, was that the burden of proving the note of Lane, West & Co. void for usury, lies upon the defendant, and he is bound to prove it clearly; and that usury cannot be presumed. The court refused to vary the charge, and the plaintiffs' counsel excepted.

The charge as given, was that if the jury were satisfied that the transaction was in fact a sale of the plaintiffs' credit, and the commission was a compensation for such sale, and it was not a loan or cover, then, though the commission exceeded 7 per cent, it was not usurious. In other words, they were told in substance that if they were satisfied that the transaction was what it appeared to be on its face, it was not usurious. This put upon the defendant the burden of proof, and it was all the plaintiffs could fairly call on the court to say to the jury.

The next request was to charge that for aught that appears, Van Olinda or Hotchkiss might sell this note to Elwell & Co. at any price. The court refused to alter the charge, and the plaintiffs' counsel excepted.

This was only another mode of asking the court to instruct the jury that the note was not usurious. This it could not do on the facts proved. The jury did find on the facts that it was usurious, and there is no court that would feel itself at liberty to set aside the verdict as against evidence.

There are two other requests to charge in reference to the effect of the exchange, under the pleadings, and the interest of Van Olinda in the notes, which do not require any further comment.

I cannot doubt that the case was presented to the jury most favorably to the plaintiffs, and that there is no error in the refusals to charge as requested.

I cannot leave the case without a brief reference to a point already incidentally alluded to, but which is entitled to a somewhat fuller examination. I refer to what was called by Chancellor KENT, in *Dey* v. *Dunham* (2 Johns. Ch., 182), and again in *Fanning* v. *Dunham* (5 id., 122), as a loan of credit, and by Judge GARDNER, in *Dry Dock Bank* v. *The American Ins. and Trust Co.* (3 Coms., 344), as a sale of credit. Both mean the same thing, and the difference is only in the words used to designate it. Judge GARDNER is of the opinion, in the case cited, that there can be no such thing as a loan of credit, and hence he used the words "sale of credit." And he uses the phrase in defining the effect of an exchange of notes, that it is in effect a sale of credit, and for which the seller has a right to receive what sum he may deem his own worth, and give to the other for his note what he considers it to be worth. If this is the law, the openings in the statute against usury are so large that usurers can drive through it in coaches gilded with the gold extorted from their victims.

There is such a thing as a sale of credit, and when credit is sold, the seller is entitled to a commission by way of compensation for his risk. Thus a man may receive a commission for indorsing or guaranteeing my note, for his draft or bill of exchange upon another. In these cases I receive the benefit of the indorsement, guaranty or draft, he becomes responsible for me, and in all the cases supposed he is secondarily not primarily liable. In case of the indorsement or

guaranty I am myself bound to protect him against loss, and, in case of the draft or bill, the drawee, if he has become a party to the paper.

But when a person delivers to me his promissory note for a consideration moving between us, the paper is mine; he is the principal debtor; there is no sale of credit about it. I hold his legal obligation, which, at maturity, I may enforce against him. This is not true of his indorsement or guaranty of my paper. If there is a sale of anything it is a sale of the obligation itself; and this Judge SELDEN demonstrates not to be the subject of sale.

If I borrow A.'s note, to be used by me to raise money, it is right and just that he should be entitled to receive a commission for his risk. Although I am bound to pay the note at maturity as I would a note endorsed by him, yet in either or both he incurs a risk, for which he should be compensated.

If A. should call upon B. for the loan of $100, and the latter not having the money should deliver to A. a horse with authority to sell it, raise the $100 and return B. the excess; if A. should give B. his note for the $100 when he receives the horse, he would not be a purchaser of the horse; he would be a mere agent of B. to sell as a means to raise the $100. Now, this is the real transaction when parties exchange notes. Each wants money, neither has it, but each can make a better use of the other's note than he can of his own, and each has to go into the market and sell the notes in order to get the money. It is a loan of the money, and is neither a loan nor a sale of credit.

I have under the second point disposed of the fourth point of the plaintiffs' counsel. In no aspect of the case can I discover any ground on which to disturb the judgment of the court below.

The judgment must, therefore, be affirmed with costs.

WRIGHT, J., was for affirmance, on the grounds assigned by DAVIES, J. All the other judges being in favor of affirmance,

Judgment affirmed.