## SUPREME COURT.

### JAMES H. TAYLOR agt. WILLIAM A. GUEST.

Where *stockbrokers*, on receiving a quantity of railroad bonds for sale for the best market price, they having no quotable market rate, inform another broker of the receipt of such bonds and request the latter to find a purchaser for them, who sends his messenger to inquire into the particulars respecting the bonds, and the messenger is also asked to find a purchaser for them and the messenger subsequently returns with a letter from his employer to the holders that he will give a certain sum for them, and the messenger remarks that it is the best price obtainable, upon which the holders, on receiving the check of the broker, without any commission being charged, close the sale at the price offered, will be entitled to recover of the purchaser fifteen per cent more, where at time of closing the sale the purchaser had already closed a bargain with another purchaser for fifteen per cent more than he gave. The fraud in the statement of the messenger, that " that is the best price obtainable," being the ground of the recovery.

*New York General Term, June,* 1873.

THE plaintiff placed with his brokers, Scott, Strong & Co., in November, 1871, $110,000 of the Jefferson railroad bonds, directing them to sell them at the best market rate. The bonds had no quotable market rate, and Scott, Strong & Co. sent word to defendant, a broker, that they had the bonds for sale. One Potter J. Thomas called on Scott, Strong & Co., to obtain the particulars, and they asked him to get a purchaser. Shortly after Thomas called on Scott, Strong & Co. with a letter from defendant, in which he offered sixty per cent for the bonds, and Thomas remarked it was the best price obtainable. Scott, Strong & Co., relying on Thomas' statement, accepted in writing Guest's offer and delivered him the bonds, receiving defendant's check therefor for $66,000.

Taylor agt. Guest.

A month afterward Mr. Scott discovered that at the time Thomas had told them that sixty per cent was the highest price he could get, he and Guest had actually closed a bargain with Daniel Drew to take the bonds at seventy-five per cent. Scott, Strong & Co. at once demanded the whole of the seventy-five per cent, which Guest refused. A suit was brought to recover the difference. Guest testified that Thomas was not his agent, and that his statements were unauthorized by him. His books were produced, and it appeared therefrom that he divided certain profits with Thomas. The court decided that, as Guest had received and charged no commission, but had openly bid in his own name and given his own checks for the purchase-price, plaintiff could not recover. The plaintiff appealed, and the whole case was argued before the full bench.

H. S. BENNETT, *for plaintiff*.
WALDO HUTCHINGS, *for defendant*.

BRADY, *J.*—The evidence in this case establishes the facts that Mr. Scott sent to the defendant's office to say that his firm held the bonds and wanted to sell them or to find a purchaser for them; that in response Mr. Thomas called and was advised by Mr. Scott that he wanted him to sell the bonds for the best price he could; that Thomas had previously acted for the defendant in transactions of a similar character; that Thomas and the defendant obtained an offer of seventy-five per cent for the bonds; that subsequently Thomas went to Mr. Scott and said that sixty per cent was the best price he could obtain; that Mr. Scott finally accepted the bid, and that the defendant gave his checks for the amount of the price of both purchases. It also appears that Mr. Scott, when he learned that the bonds had been sold to Mr. Drew for seventy-five per cent, complained to Thomas of the circumstance as a fraud, and that the latter admitted having made the statement that sixty per cent was the best price he could obtain

for the bonds. The referee finds that Thomas made this representation, but adds that it was done without the knowledge of and without any express direction or authority of or from the defendant. It is not questioned, indeed it cannot be, that the defendant reaped the benefit of such representation. He gave the checks for the bonds knowing that he had a purchaser who stood ready to pay him fifteen per cent advance, and whom he had secured prior to the purchase. The fact that Thomas represented him and that he knew it, whether he was ignorant of his mode of negotiation or not, is undoubtedly established by the proof, and on well settled principles he is responsible for the conduct of his agent (*Story on Agency, pp.* 126, 127, *and cases cited; Elwell* agt. *Chamberlin,* 31 *N. Y. Rep.,* 611; *Gutchers* agt. *Whiting,* 46 *Barb.,* 139; *Story on Contracts, vol.* 1, *c.* 496 [*4th ed.*]; *Parsons on Contracts, vol.* 1, 73 [*5th ed.*]; *Atwood* agt. *Small,* 6 *Bl. & F.,* 448). The referee finds that Mr. Scott had a right to presume, from the relations existing between Thomas and the defendant, that Thomas made the statement under consideration as the agent or employe of the defendant, and therefore, whether he knew it or not, is, as already suggested, immaterial. He availed himself of the result of the misrepresentation, and he cannot hold it either in law or in morals. It is enough, to require him to make restitution, that through the instrumentality of his authorized representative he has obtained improperly what he is called upon to restore (*Elwell* agt. *Chamberlin, supra*). No other proposition can be maintained in courts of justice, and the contrary has not been asserted except where the agent has acted beyond the sphere or scope of his power or authority in reference to the transaction. The statement of the best price was legitimately within it, and was one, as stated by the learned referee, upon which Messrs. Scott, Strong & Co. had a right to rely. This is not the case of an offer made by a person contemplating a purchase, where the right undoubtedly exists to make any bid which judgment or fancy may dictate. It is, on the contrary, a transaction in

which the dealing rested upon the statement and belief that the price named was the best that could be obtained, made by a person acting on behalf of the seller, or pretending to do so, no matter which. The omission or intention not to pay a commission does not affect the question. The proof that brokers do not charge it as against each other is not material in this case. The fraudulent element which pervades the transaction destroys all minor considerations (*See Conkey* agt. *Bond,* 34 *Barb.,* 276; *Same Case in Court of Appeals,* 3 *Abb., N. S.,* 415). And it may be said in addition that the defendant's gain by the sale which he made was no doubt entirely satisfactory, rendering insignificant the amount a commission would furnish. It seems, therefore, that whether we accept the findings of the referee or group them from the testimony, this judgment should be reversed, and such must be the order of the court.

NOTE.—Suppose that Thomas, the messenger, when he took defendant's letter and check which he delivered to Scott, Strong & Co., had remained silent, and made no statement whatever as to the best price which could be obtained for the bonds, and Scott, Strong & Co. had closed the sale by accepting the defendant's offer and his check, would the defendant have been liable to the plaintiff for the additional fifteen per cent which he received from Drew? Probably not, as there would have been no misrepresentation in the matter in such case. Now, how does the misrepresentation of Thomas create the defendant's liability? It would seem to be only by showing that Thomas acted as his agent. What are the facts about this? They are that the defendant swore that Thomas was not his agent and had no authority from him to make such statement, and so the referee finds. The fact that Strong, Scott & Co. had a right to presume and to rely upon the statement of Thomas, because he had previously acted for the defendant in transactions of a similar character, would go for nothing, after the evidence was given, by the defendant in this case, that Thomas was not his agent, and had no authority from him to make the representations stated.

It would appear to be pretty critical and hazardous dealing among stockbrokers if, where one sends his errand boy or porter with a letter containing an offer to purchase stocks to another, the latter can by some false statement made by the messenger, without any authority whatever, make the former liable to respond in damages for the effect of such statement.—REP.