# THE ST. LOUIS AND SOUTH-EASTERN RAILWAY COMPANY *v.* MYRTLE.

VERDICT.—In an action for unliquidated damages, it did not appear that the verdict was the result of a compromise from the fact that it was rendered for five hundred and sixty-two and one-half dollars.

SAME.—*Compromise Verdict.*—In an action for unliquidated damages, the jury may, to arrive at a verdict, resort to means that are not allowed in criminal actions, or in civil actions where the damages are liquidated.

RAILROAD.—*Regulation of Company.*—A railroad company has a right to adopt a regulation that all persons who travel on a freight train shall procure a ticket before entering the cars; but such a regulation imposes upon the company the duty of having the ticket office open a sufficient length of time before the departure of the train to enable passengers to procure tickets.

SAME.—*Right of Passenger.*—Notwithstanding such regulation on the part of a railroad company, if a person desiring to take passage upon a freight train endeavored to procure a ticket, but could not do so in consequence of the absence of the agent, he had a right to travel on such train by paying or offering to pay the usual fare.

The St. Louis and South-Eastern Railway Company *v.* Myrtle.

SAME.— *Expulsion of Passenger.* — *Damages.* — Where such passenger was expelled from the train in a rough manner, accompanied with profane and unbecoming language, the Supreme Court would not disturb, as excessive, a verdict for damages in the sum of five hundred and sixty-two and one-half dollars.

COURT AND COUNSEL.—*Discussion of Facts Outside of Case.*—A court may interfere and stop the argument of counsel, when he is discussing matters outside of the case, without objection or suggestion from opposing counsel; and such action will be sustained, unless there be a gross abuse of discretion. But a failure on the part of the court to interfere, when opposing counsel are present and do not ask the interposition of the court or object to the line of argument pursued, will not entitle the party represented by such opposing counsel to a new trial.

From the Posey Circuit Court.

*A. Iglehart* and *J. E. Iglehart,* for appellant.

*J. H. Laird,* for appellee.

BUSKIRK, J. — This was an action by the appellee to recover damages for an alleged injury and ejectment from the cars of the appellant, in August, 1873, at Mount Vernon.

The complaint is in two paragraphs. The first paragraph alleges that it was a rule of the company not to permit passengers to travel on freight trains without tickets, and at the time mentioned plaintiff entered the cars of the company, but was unable to first procure a ticket, because the ticket office of the company was not open on this occasion before the train passed; that, upon his failure to furnish a ticket, he tendered his fare to the conductor, who refused to receive it, but directed the plaintiff to leave the train, and, upon his refusal, with force and arms assaulted and expelled him from the train.

The second paragraph contains, substantially, the same averments as the first.

To this the defendant filed a general denial, and a special answer, which set up the following facts:

That the train mentioned was a freight, not a passenger train; that defendant was not desirous of carrying passengers on freight trains, but carried them for the accommodation of the public, and upon the express condition that pas-

sengers should first furnish and produce to the conductors of freight trains a ticket, and none were to be permitted to travel otherwise, which condition and rule were known to plaintiff before the happening of the alleged injuries; that plaintiff was travelling in the caboose attached to the train, without a ticket; that thereupon the conductor gave him notice that he could not ride without a ticket, and forbade his so travelling without a ticket, and then notified him to leave the caboose, which he then and there did. The averments of the use of force and violence, and that the plaintiff was unable to procure a ticket, are denied.

The reply of the plaintiff states that he applied, a reasonable time before the starting of the train, for a ticket, at the office, which was closed till the starting of the train; that he then entered the cars of the defendant, and complied with all the rules and regulations, so far as he could, and that the defendant and its officers committed said injury of their own wrong.

There was a trial by jury, a verdict for the plaintiff for five hundred and sixty-two and one-half dollars. A motion for a new trial was overruled, exception taken, and judgment rendered on the verdict, and the defendant excepted, and appeals to this court.

The grounds of the motion for a new trial were, that the verdict was contrary to law, contrary to the evidence, contrary to the law and evidence, and that the damages were excessive. The fifth, sixth and seventh grounds assigned are, misconduct of plaintiff, by his counsel, at the trial, in making statements to the jury, which are set out at length in the bill of exceptions and the written causes.

It is assigned for error, that the court erred in overruling the motion for a new trial.

Counsel for appellant contend, first, that it is clear that no correct legal principle governed the jury in the assessment of damages; that the odd half dollar in the verdict was evidently agreed upon in a compromise, and the dividing of differences by the jurors; that where it is clear that the

damages assessed by a jury were not estimated upon any correct legal principle, the verdict should be set aside. *Ellsworth* v. *Central R. R. Co.*, 5 Vroom, 93.

In the case cited, it was held that when it is impossible to reconcile the amount of the damages found by the jury with any legal principle, it will be set aside. The ruling was made in reference to excessive damages, and not that the verdict had been obtained by unfair means.

We do not think that it appears that the verdict was the result of a compromise from the fact that it was rendered for five hundred and sixty-two dollars and fifty cents; but if it does so appear, it would not vitiate the verdict.

This was an action to recover unliquidated damages, and it is settled that in such actions the jury may resort to means, to arrive at a verdict, that are not allowed in criminal actions, or in civil actions where the damages are liquidated.

In *Guard* v. *Risk*, 11 Ind. 156, the court say:

"In support of the motion for a new trial, it was shown by affidavit that, after the jury had retired to their room to consult of their verdict, 'it was proposed by one of them that each juror should put down on paper such amount as he pleased, and divide the aggregate amount by twelve.' All the jurors acceded to the proposition, though there was no agreement or understanding among them that the result of the figures should stand as the verdict. And the jurors having proceeded in accordance with the proposal, and the result being announced, it was agreed by them that that result should be their finding in the case, and the verdict was returned accordingly.

"In this, we perceive no misconduct of the jury. The law is well settled, that, in actions for unliquidated damages, the jury may adopt the process resorted to in this case to obtain a medium sum to be submitted for a verdict. *Dunn* v. *Hall*, 8 Blackf. 32; *Dorr* v. *Fenno*, 12 Pick. 521; *Grinnell* v. *Phillips*, 1 Mass. R. 530; *Harvey* v. *Rickett*, 15 Johns. 87."

It is insisted by counsel for appellant that the damages

assessed are excessive, and in support of such position they say:

"The case of *The Chicago, etc., R. R. Co.* v. *Parks*, 18 Ill. 460, is a case very similar to the one at bar. In that case, the conductor required the passenger, who was an attorney, to pay a greater sum than the price of a ticket under the regulations, which was refused, and the passenger was put off the train in the rain, at a point distant from a depot, which latter was contrary to law. The jury found one thousand dollars, and the Supreme Court say: 'He was entitled to recover whatever damages he sustained by being put off at that place, instead of at the depot. But it rained at the time, and he had to walk back in the wet. There is no evidence that he took a cold, or in any way became indisposed in consequence, but, on the contrary, the evidence shows that he was found, some few hours afterwards, at his place in court in Geneva, some two or three miles from Batavia, so that there were no special damages resulting from that, more than the discomfort and inconvenience of it. There is no evidence showing malice on the part of the company or the conductor. He performed his unpleasant task with evident reluctance, and without ostentation or arrogance, or display of authority, and, so far from there being evidence of enmity between the parties, the testimony would lead to the conclusion that a friendly relation existed between them.'

"The facts of that case, so far as the conduct of the parties and the result were concerned, are almost precisely similar to the case at bar. The court in that case reversed the judgment upon the ground of excessive damages. We quote the language:

"'For putting the plaintiff off the train, at a place not allowed by law, a technical wrong was done him, for which he undoubtedly had a right to bring this action, and to recover such damages as he sustained for the wrong done him. The jury allowed him one thousand dollars for those damages, which the circuit court refused to set aside, and this decision is also assigned for error. We cannot hesitate to

say that the damages allowed are grossly, not to say outrageously, excessive. Although, in a case of this kind, this court will interfere with a verdict with great reluctance, yet we will not hesitate to do so, where it is apparent, at first blush, that the jury have misapprehended the law of the case, or misunderstood the facts, or else have been influenced by their passions or their prejudices, rather than the law and the facts. It is not the duty of courts to enforce the arbitrary edicts of juries; but it is their duty to firmly and fearlessly stand between the party and the jury, whenever it is manifest that the party has been made a victim to their prejudices. In this class of cases great latitude should, no doubt, be allowed to juries in their estimate of damages, but to this there must be a limit; and should we refuse to interfere in this case, it would be equivalent to saying to juries, in all cases of this kind, we will shut our eyes to the facts of the case, and let you work your will with all parties placed in your hands. Now, do with them as you please; we will not interfere.'

"In the case at bar, the conduct of the conductor and the plaintiff, Myrtle, and the result of the occurrence, do not materially differ from the facts given in the opinion above quoted, and the reasoning there equally applies here. The jury were moved by passion and prejudice. The law was misstated to them by counsel for the plaintiff, who is estopped to deny that the jury misapprehended the law; and the verdict itself shows that by a kind of average they found a verdict, and not upon principles of justice and fairness. The measure of damages in the case cited is such damages as the plaintiff sustained for the wrong done him. For a technical wrong the appellee recovers five hundred and sixty-two dollars and fifty cents, which we say, upon the testimony, at first blush, appears to be greatly excessive.

"In the case last cited, the law is stated, that appellate courts will not hesitate to interfere with a verdict, where it is apparent that the jury misapprehended the law, or misunderstood the facts of the case, or where they were improp-

erly influenced by their passions and prejudices. All these grounds exist in the present case for the court's interfering with the verdict of the jury.

"The passions and prejudices of juries exhibited against railroad corporations are wide-spread and very common, and it is therefore of the utmost importance that a fair trial in all such cases should be awarded the defendants.

"The case of *The Jeffersonville Railroad Co.* v. *Rogers*, 38 Ind. 116, cited by counsel of plaintiff below, differs from the case at bar. In that case, the ticket office was open, but a ticket refused, and the passenger was put off in the night, between stations, and subjected to inconvenience, expense and trouble; and from the circumstances of that case the jury were permitted to infer malice, while in the case at bar no such circumstances exist. That case is more aggravated than this, and the court do not there say that the verdict was a righteous verdict, and herein was a misstatement and misrepresentation of the law to the jury."

The evidence of the appellee is uncontradicted by any witness, but is strongly corroborated by the sheriff and another witness. The evidence in the cause was as follows:

"I reside in Mount Vernon, Indiana, and by trade am a cooper; on the day of the expulsion complained of, I was employed by Alexander Crunk, sheriff of Posey county, to go with him to Indianapolis, to take my uncle, a crazy man, to the asylum; we were going to Indianapolis by way of Evansville; I left Crunk and the crazy man to come on, and went ahead to the Mount Vernon depot, and found the freight train there with the passenger car at the rear, as usual; it was about 8 o'clock in the morning; I went into the reception room and found the ticket office closed; I told the conductor that the sheriff was coming with a crazy man to go on the train; he answered, 'you cannot go without tickets;' I ran back and met Crunk, and told him that the ticket office was closed, and the conductor refused to let us go without tickets; Crunk told me to get on, and we all got on, and the conductor came along and asked us for our tick-

·ets, and we told him we had none, but Mr. Crunk offered him the money for all our fares; but he would not accept it, and then said we could not ride there, we would have to get off; and Mr. Rosenbaum and another gentleman, who were on the train, told Mr. Crunk that they had return tickets, and gave them to Mr. Crunk, who gave them to the conductor for him and the crazy man; and the conductor then started up the train, but, coming to me, and finding I had no ticket, stopped it and took me by the arm and jerked me and said I must go out unless I had a ticket, that it was contrary to the rules of the company to carry a passenger on that train without a ticket; I started out with the conductor, and as I went out my uncle began to make a fuss, and when I had gotten out on the platform, I asked him, the conductor, to let me remain on the train, to which he answered, ' Get off here, G—d d—n you!' and thereupon I got off and walked down town; and as I came down Main street, two or three squares this side of the depot, I met Graham, the ticket agent, going toward the depot."

Cross-examined. " What do you mean, when you say the conductor took hold of you and jerked you? How did he jerk you?"

Answer by the witness.—" He took hold of me this way." The witness here took hold of the coat sleeve of a juror, and plucked it gently.

The plaintiff then produced Moses Rosenbaum, who, being duly sworn, deposes as follows:

" I was on the train, going to Evansville, on the morning referred to by the plaintiff. Myrtle was sitting by the crazy man, and the conductor stopped his train and touched Myrtle, putting his hand on his arm, and told him he must go out; and the plaintiff got up and went out, and I saw no more of him. I and another gentleman had return tickets, and we gave them to Mr. Crunk for him and the crazy man."

And the plaintiff then proposed as a witness Alexander Crunk, who, being sworn, testified as follows:

"On the day referred to by the plaintiff, I went with a crazy man to the defendant's depot, and found the train standing at the depot. I went into the car, taking with me a crazy man whom I had in charge, as sheriff of Posey county, to be taken to Indianapolis, by way of Evansville. I had employed the plaintiff to go with me to help to take care of the crazy man. We took our seats in the cars, myself, the plaintiff and the crazy man, and the conductor came to us and asked us for our tickets. I told him we had none. He said he could not take us without, as he had express orders not to carry passengers without tickets upon that train. And I told him we must go, and offered to pay the money for our fare; but he would not accept it, and said he must have tickets or he could not carry us; and thereupon Mr. Rosenbaum and another gentleman gave me their return tickets, and I gave them to him; and thereupon started up the train, and then came back to the plaintiff, and asked for his ticket, and, being answered that he had none, stopped the train and told the plaintiff that he must get off, and the plaintiff thereupon got up and went off. He seemed not to observe, when he started up, that plaintiff was without a ticket. My contract with the plaintiff was, that I was to pay his expenses to Indianapolis and back, and he was not to charge any wages."

This was all the evidence given in the cause.

We think the appellant had the right to adopt a regulation that all persons who travelled on a freight train should procure tickets before entering the cars. *The Indianapolis, etc., R. W. Co.* v. *Rinard*, 46 Ind. 293. But such a regulation imposed upon the company the necessity of having the ticket office open a sufficient length of time before the departure of the train, to enable passengers to procure tickets. It is shown by the evidence that the ticket office was not open, on the morning in question, until after the departure of the train. The appellant tried to procure a ticket, but could not do so in consequence of the absence of the agent. He therefore had a right to travel on the train in ques-

The St. Louis and South-Eastern Railway Company *v*. Myrtle.

tion, without a ticket, by paying the ordinary fare, which he offered to do. His expulsion from the cars was wrongful.

But it is claimed that he was only entitled to recover nominal damages.

We do not think the facts of the case are like those in the Illinois case, *supra*. The appellant had been employed by the sheriff to assist him in conveying to the insane asylum an insane man, who was his uncle. The conductor was notified of the facts. He also knew that appellant had left the train to procure a ticket, before the arrival of the train. It is but reasonable to presume, from the facts proved, that he must have known that the ticket office was not open. The expulsion of the appellant excited the insane man, deprived the sheriff of his influence in controlling his uncle, and compelled the sheriff to proceed without assistance. The force used by the conductor was slight, but his manner was rough, and his language profane and unbecoming the occasion and his duties.

After careful consideration, we have come to the conclusion that we cannot disturb the verdict on the ground that the damages are excessive.

The fifth, sixth and seventh reasons for a new trial relate to the alleged misconduct of counsel for appellee in making the closing argument of the cause. It is claimed that counsel stated in his argument that a certain fact had been proved, when, in truth and fact, it had not been so proved; and that he went outside of the evidence, and spoke of the conduct of the appellant in securing the right of way and in the assessment of damages. The argument of counsel upon such points is set out in the bill of exceptions, which shows that counsel for appellant was present during the delivery of the closing argument; but it does not show that any objection was urged to such argument, or that the court was called upon to stop counsel and confine him within the record. It is settled by the very decided weight of authority, that it was the duty of counsel for appellant to have called the attention of the court to the character of the argument being

made, and sought his interposition to prevent a continuance of such argument; and if the court, being thus called upon, had failed or refused to interpose and stop the argument, counsel for appellant could have taken an exception, and assigned such ruling as a reason for a new trial.

There is conflict in the adjudged cases as to whether it is the duty of the court to interpose and stop the argument of counsel, when he is discussing matters outside of the facts of the case, without suggestion or objection from opposing counsel. There is no doubt that the court may do so, and that such action will be sustained, unless there is a gross abuse of discretion. A court, in performing this unpleasant and delicate duty, should be careful to avoid every appearance of taking sides between the parties. But it is settled by the very decided weight of authority, that the failure of the court to interpose, when opposing counsel are present in court, and do not ask the interposition of the court, or object to the line of argument being pursued, will not entitle the party to a new trial.

We have examined, and cite, the following cases bearing upon the respective duties of court and counsel in the argument of causes: *Cook* v. *Ritter,* 4 E. D. Smith, 253; *Fry* v. *Bennett,* 3 Bosworth, 200; *Thompson* v. *Barkley,* 27 Penn. St. 263; *Berry* v. *The State,* 10 Ga. 522; *Mitchum* v. *The State,* 11 Ga. 633; *Cartright* v. *Clopton,* 25 Ga. 85; *Cobb* v. *The State,* 27 Ga. 648; *Royston* v. *Royston,* 29 Ga. 82; *Cotten* v. *Rutledge,* 33 Ala. 110; *Larkins* v. *Tarter,* 3 Sneed, 681; *Edwards* v. *The State,* 22 Ark. 253; *Ayrault* v. *Chamberlain,* 33 Barb. 229; *Ormsby* v. *Johnson,* 1 B. Mon. 80; *Gray* v. *Burk,* 19 Texas, 228; *Clark* v. *City of Lowell,* 1 Allen, 180; *The State* v. *Upham,* 38 Maine, 261; *Hodgson* v. *Scarlett,* Holt N. P. 621; 3 E. C. L. 203; *Brook* v. *Sir Henry Montague,* Cro. Jac. 90; 1 Hawk. P. C., sec. 8; *Cutler* v. *Dixon,* 4 Coke, 146, note a; *Waterer* v. *Freeman,* Hobart, 266; *Weston* v. *Dobniet,* Cro. Jac. 432; *Astley* v. *Younge,* 2 Burr. 807; *Hodgson* v. *Scarlett,* 1 B. & Ald. 232; 3 Bl. Com. 29; *Ferguson* v. *The State,* 49 Ind. 33; *Fletcher* v.

*The State,* 49 Ind. 124; *Tucker* v. *Henniker,* 41 N. H. 317.

The correlative duties of court and counsel in conducting the argument of a cause are stated with so much clearness, force and practical good sense in *Tucker* v. *Hennicker, supra,* that we are induced to make an extended extract from the opinion, in the earnest hope that the suggestions therein contained will have a tendency to promote that fairness, courtesy, dignity and purity, which should characterize the intercourse and deportment of those engaged in the administration of justice. The court say:

"We also think the court erred in permitting the counsel for the plaintiff to proceed with his argument upon facts not in evidence, and having no proper bearing upon the questions in issue, after their attention had been called to the matter, and their interposition sought, although the course of remark permitted might have seemed to be excused by the previous allusions of the defendants' counsel to considerations scarcely more pertinent and proper. No fault of the opposite counsel could justify a repetition of that fault by his opponent. The jury are sworn to render a true verdict in every case, according to law and the evidence given them, and the well established rule of judicial proceedings confines the arguments of counsel before them to comments upon and suggestions in relation to that law and the evidence. It would seem utterly vain, and quite useless, to caution jurors, in the progress of a trial, against listening to conversations out of the court room in regard to the merits of a cause, if they are to be permitted to listen in the jury box to statements of facts calculated to have a bearing upon their judgments, enforced and illustrated by all the eloquence and ability of learned, zealous and interested counsel.

"It is irregular and illegal for counsel to comment upon facts not proved before the jury as true, and not legally competent and admissible as evidence. The counsel represents and is a substitute for his client; whatever, therefore, the client may do in the management of his cause, may be done

by his counsel. The largest and most liberal freedom of speech is allowed, and the law protects him in it. The right of discussing the merits of the cause, both as to the law and facts, is unabridged. The range of discussion is wide. He may be heard in argument upon every question of law. In his addresses to the jury, it is his privilege to descant upon the facts proved or admitted in the pleadings; to arraign the conduct of parties; impugn, excuse, justify or condemn motives, so far as they are developed in evidence; assail the credibility of witnesses, when it is impeached by direct evidence, or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance on the stand, or by circumstances. His illustrations may be as various as the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wings to his imagination.

"To his freedom of speech, however, there are some limitations. His manner must be decorous; all courts have power to protect themselves from contempt, and indecency in words or sentiments is contempt. This is a matter of course in the courts of civilized communities, but not of form merely, for no court can command from an enlightened public that respect necessary to an efficient administration of the law, without maintaining, in its business proceedings, that courtesy, dignity and purity, which characterize the intercourse of gentlemen in private life.

"So, too, what a counsel does or says in the argument of a cause must be pertinent to the matter on trial before the jury, and he takes the hazard of its not being so. Now, statements of facts not proved, and comments thereon, are outside of a cause; they stand legally irrelevant to the matter in question, and are, therefore, not pertinent. If not pertinent, they are not within the privilege of counsel.

"But, farther, every person against whom an accusation is made or a suit brought, is entitled to be tried by a jury, and according to the laws of the land. This was the greatest of

all the privileges conferred by *magna charta,* and is guaranteed by our own fundamental law. This privilege is substantially violated, if counsel are permitted to state facts and comment upon them in argument against the adverse party, which are not before the jury by proofs regularly submitted. The party accused or prosecuted is not only entitled to have a trial by a jury of twelve men duly constituted, but to have his trial conducted according to the course and usage of the common law, and the established rules of judicial proceedings. An essential element in the trial by jury is, that the verdict shall be rendered according to the facts of the case, legally produced before the jurors. They are sworn to give their verdicts according to evidence, and if they find without evidence, or against evidence, or upon evidence incompetent, or not legally admissible for any cause, a new trial will be granted. They cannot even render a verdict upon knowledge within their own breasts; but if a juror has knowledge of facts pertinent to the issue, he may be sworn. The law, with great care, prescribes the rules by which facts are to be submitted to the jury. The testimony must be relevant; the best evidence the nature of the case admits must be produced; hearsay is excluded; it must not be drawn out by leading questions; and, by our constitution, in criminal trials, the witnesses must be confronted with the prisoner; the right of cross-examination exists in all cases. All these and numerous other regulations are prescribed to determine the admissibility and truth of the facts pertinent to the issue upon which a verdict is to be rendered.

"When counsel are permitted to state facts in argument, and to comment upon them, the usage of courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury is denied. It may be said, in answer to these views, that the statements of counsel are not evidence; that the court is bound so to instruct the jury, and that they are sworn to render their verdict only according to evidence.

" All this is true; yet the necessary effect is to bring the

statements of counsel to bear upon the verdict with more or less force, according to circumstances; and if they in the slightest degree influence the finding, the law is violated, and the purity and impartiality of the trial tarnished and weakened. If not evidence, then manifestly the jury have nothing to do with them, and the advocate has no right to make them. It is unreasonable to believe the jury will entirely disregard them. They may struggle to disregard them; they may think they have done so, and still be led involuntarily to shape their verdict under their influence. That influence will be greater or less, according to the character of the counsel, his skill and adroitness in argument, and the force and naturalness with which he is able to connect the facts he states with the evidence and circumstances of the case. To an extent not definable, yet to a dangerous extent, they unavoidably operate as evidence which must more or less influence the minds of the jury, not given under oath, without cross-examination, and irrespective of all those precautionary rules by which competency and pertinency are tested."

The appellant was represented in the court below by able counsel, who failed to object to the line of argument being pursued by counsel for appellee, and thereby waived the right to be now heard.

The judgment is affirmed, with costs.