[No. 304. Decided October 29, 1891.]

C. S. BARDWELL, S. C. ROBINSON AND CHARLES N. ROBINSON, *Appellants*, v. LOUIS ZIEGLER, *Respondent*.

CUSTOM—PAROL EVIDENCE—INSTRUCTIONS—COMMENTING ON FACTS.

In an action upon a contract to furnish within a stipulated time certain wainscoting and stairwork for a building, according to the architect's plans and specifications, parol evidence is admissible to show that under such contracts the general custom is to take actual measurements, and that such contracts are entered into with reference to such general custom, as an excuse for plaintiffs' not performing their part of the contract within the time stipulated.

Under art. 4, § 16 of the constitution, providing that "judges shall not charge juries with respect to matters of fact, nor comment

thereon," it is error to tell the jury there is no dispute in the testimony on a certain point, or that any fact is conclusively proven. (HOYT, J., dissents.)

*Appeal from Superior Court Spokane County.*

The facts in the case are stated in the opinion of the court.

*Jones & Voorhees,* and *Binkley & Taylor,* for appellants:

It is a well settled rule of the law that where a party is prevented from the fulfillment of his contract through the fault of the other party thereto, or of some one acting under or for him, there is no foundation for a claim for damages against the contractor. *Van Buren v. Digges,* 11 How. 461; *Clearwater v. Meredith,* 1 Wall. 39; *United States v. Peck,* 102 U. S. 64; *Fleming v. Gilbert,* 3 Johns. 528; *Wilt v. Ogden,* 13 Johns. 56; *Stewart v. Keteltas,* 36 N. Y. 388; *Weeks v. Little,* 89 N. Y. 566; *Sperry v. Fanning,* 80 Ill. 371; *Taylor v. Renn,* 79 Ill. 181.

It was competent to show by parol a custom relating to the taking of measurements, which entered into that part of the contract relating to plans and specifications. *United States v. Peck,* 102 U. S. 64; *Bradley v. Steam Packet Co.,* 13 Pet. 89; *Thorington v. Smith,* 8 Wall. 12; *Reed v. Insurance Co.,* 95 U. S. 23; *Robinson v. United States,* 13 Wall. 363. Parol evidence is always admissible for the purpose of showing an established custom with reference to which the words and phrases in a contract are used. *Lyon v. Lenon,* 106 Ind. 567; *Home Ins. Co. v Favorite,* 46 Ill. 263; *Coggeshall v. American Ins. Co.,* 3 Wend. 283; *Coit v. Com. Ins. Co.,* 7 Johns. 385; 5 Am. Dec. 282; *Sleght v. Hartshorne,* 2 Johns. 531; *Wilcox v. Wood,* 9 Wend. 346; *Hinton v. Locke,* 5 Hill. 437; *Astor v. Union In. Co.,* 7 Cow. 202; *Newhall v. Appleton,* 114 N. Y. 140; 2 Pars. Cont. (7th ed.), 666, *et seq; Patterson v. Crowther,* 70 Md. 124.

The use of the language in the charge to the jury by

the lower court. "There is no dispute between the parties upon the evidence in this case," was a clear and manifest usurpation of the most vital function of the jury. Const. art. 4. § 16; *Knox v. Parker,* 2 Wash. 34; *Freidrich v. Territory,* 2 Wash. 358; *Village of Fairbury v. Rogers,* 98 Ill. 557; *Elston, etc., Gravel Road Co. v. People,* 96 Ill. 587; *People v. Williams,* 17 Cal. 147; *Cahoon v. Marshall,* 25 Cal. 198; *People v. Dick,* 34 Cal. 664; *Brumagim v. Bradshaw,* 39 Cal. 38. Where the evidence is conflicting in the least degree, the court should leave it entirely to the consideration of the jury. *Buffington v. Cook,* 35 Ala. 312; 73 Am. Dec. 491; *McKenzie v. Branch Bank,* 28 Ala. 606; 65 Am. Dec. 369; *Birney v. Telegraph Co.,* 18 Md. 341; 81 Am. Dec. 607.

*Fenton & Fenton,* for respondent:

Courts have no authority to relieve contracting parties from the hardships occasioned by contracts which it was within the power of the parties to prevent. *Meriwether v. Lowndes Co.,* 89 Ala. 362; *McDermott v. Jones,* 2 Wall. 1; *School District No. 1 v. Dauchy,* 25 Conn. 530; 68 Am. Dec. 371; *Harmony v. Bingham,* 12 N. Y. 99; 62 Am. Dec. 142; *Booth v. Rolling Mill Co.,* 60 N. Y. 487; *Wareham Bank v. Burt,* 5 Allen, 113; *McCreery v. Green,* 38 Mich. 172. Where specifications are attached to a building contract at the time of signing, they are merged into the contract and become a part of it, and the builder is bound by the terms of the specifications. *Coey v. Lehman,* 79 Ill. 173; *Smith v. Flanders,* 129 Mass. 322.

Parol evidence of custom or usage is not admissible to give an interpretation to a contract inconsistent with its language. *Marks v. Elevator Co.,* 43 Iowa, 146. A written or expressed contract cannot be controlled, varied or contradicted by custom, and evidence thereof is not admissible or competent to vary a written contract. *Partridge v. Insurance Co.,* 15 Wall. 573; *Davis v. Galloupe,* 111 Mass. 121; *Po hemus v. Heiman,* 50 Cal. 438; *Sanford v. Raw-*

*lings*, 43 Ill. 92; *Dickinson v. Gay*, 7 Allen, 34; 83 Am. Dec. 656; *Sawtelle v. Drew*, 122 Mass. 228.

If the existence of a fact is established by the evidence without any conflict, it is not an available error for the court to instruct the jury that there is evidence *tending* to prove such fact. *Koerner v. State*, 98 Ind. 13; *Beattie v. Hill*, 60 Mo. 72. Even if it should be held in strictness that to instruct the jury that *the evidence shows a certain fact* is error, and a violation of the constitutional provision, yet, if there be no conflict in the evidence, the error is immaterial and should not be regarded. *Pico v. Stevens* 18 Cal. 377; *Terry v. Sic?.les*, 13 Cal. 427; *Watson v. Damon*, 54 Cal. 278; *Tompkins v. Mahoney*, 32 Cal. 231. At most the court is only precluded from charging with respect to matters of fact contested. *People v. Welch*, 49 Cal. 181.

The opinion of the court was delivered by

DUNBAR, J.—By written contract between the parties, plaintiffs agreed to furnish defendant certain materials to be used in finishing a building in Spokane; certain of the materials to be furnished on board the cars at Minneapolis, on or before the 15th day of December, 1889, and certain other materials, to wit, the doors and paneled wainscoting and stairs, on or before the first day of January, 1890, and this provision occurs in the contract:

"And the second party, for and in consideration of the first party's completely and faithfully executing the aforesaid work, and furnishing all the material therefor, so as to fully carry out this contract and design, according to its true spirit, meaning and intent, and by and at the times mentioned, and to the full and complete satisfaction of H. Preusse, superintendent, does hereby agree to pay," etc., etc.

It is provided in the contract that the materials shall be furnished according to the plans and specifications and drawings, which are declared to be a part of the contract. The

contract provides for damages in case of the failure of the plaintiffs to furnish the material by the time specified. The doors, wainscoting and stairs were not delivered for some six weeks after the time specified, and by reason of said delay defendant claims damages and seeks to recoup upon plaintiffs in the sum of fifteen hundred dollars. Plaintiffs in reply claim that the failure was caused by the negligence of the defendant in not having the building in such a state of progression that the measurements for the stairs could be taken, and that the measurements could not be taken from the plans and specifications, but must be made by actual, physical measurement of the house itself. Plaintiffs offered evidence tending to show this state of facts, and to show that under such contracts the general custom was to take actual measurements, and that such contracts were entered into with reference to such general custom. The introduction of this testimony was objected to by defendant, and the objection was sustained by the court. Among the questions asked and rejected by the court, was the following:

"Q. Now I will ask you to state, Mr. Carter, whether or not it was possible to take the measurements requisite and necessary for the manufacture of the panel, wainscoting and stair work from the plans and specifications?"

And also the following question:

"Q. I will ask you whether or not there is any general custom, in a contract of this kind, which establishes the fact or understanding in the business that certain measurements must be taken before work can be done, even where the contract provides it must be done according to plans and specifications?"

To the refusal of the court to allow this testimony to be introduced, the plaintiffs duly excepted, and assign it as error here. We think the court erred in refusing to allow this testimony. It could not be introduced for the purpose of contradicting the contract, or to interpret it inconsistently with its language; but of explaining its meaning in the

light of general custom, with reference to which the parties would be supposed to contract; and on the further principle that a man will not be presumed to intentionally contract to do a thing that it is impossible for him to do.

As we read the cases cited by the respondent, none of them go to that extent. In *Davis v. Galloupe,* 111 Mass. 121, the plaintiffs, stone cutters, agreed in writing with defendant to furnish stone for his building according to the plans and specifications of an architect, and to do all the fitting and rebating necessary. Wooden patterns were necessary for cutting the stone under the plans, and the plaintiffs procured and paid for them without asking the defendant or the architect to furnish them. *Held,* in an action to recover the amount paid for these patterns, that evidence of the usage of stone cutters in cutting stone for a building to purchase such patterns and recover the cost from the owner of the building was inadmissible. But it seems to us there is no parallel between that case and the one at bar. Here it was attempted to show that it was *impossible* for plaintiffs to comply with the contract without an actual measurement; that a general custom grew out of that fact, and that the parties contracted with reference to that fact. There the contract could be and was performed; and the court made that plain distinction, and inferentially announced the doctrine, that if the performance of the contract had been *impossible* without the patterns having been furnished by the defendant, the custom might have been shown, by the use of this significant language:

"As the plaintiffs actually prepared the patterns, it is obvious that it was not necessary that the defendant should furnish them to enable the plaintiffs to do the work."

*Partridge v. Insurance Co.,* 15 Wall. 573, enunciates the doctrine that the custom cannot be proven to vary or contradict the well expressed intention of the parties. In *Sawtelle v. Drew,* 122 Mass. 228, all that was decided was, that

evidence to prove a custom was inadmissible in the absence of evidence that the plaintiff knew of such custom. On the other hand, the court in its opinion says:

"A custom, within the meaning of the law, if general, is incorporated into and becomes a part of every contract to which it is applicable; if local, of every contract made by parties having knowledge of, or bound to know, its existence."

In *Sanford v. Rawlings*, 43 Ill. 92, a workman in marble had entered into a written contract to erect a monument, and a workman was called to testify "what in the trade of a marble dealer is meant by a contract to erect a monument," and the court very properly said that—

" It was wholly unnecessary to call a worker in marble to prove the legal import of a contract to erect a monument, or what would be understood by such a contract in the trade, because there could be no dispute as to its meaning. The law would attach to this language a precise signification."

And so with the other cases cited by respondent. On a careful examination we do not think they go so far as to exclude the testimony offered in this case. In *Stewart v. Keteltas*, 36 N. Y. 388, a case on a level with the one at bar, the plaintiffs having contracted to erect and furnish a new building therein referred to, agreeably to the drawings and specifications made by defendant's architect and signed by the parties, the court says:

"An objection to the offering of any excuse by the plaintiff for not performing his part of the contract within the time stipulated is properly overruled, and that under such contract, where the work to be performed by the plaintiff could not be performed until other work was done by defendant or his employés, the failure to have such preliminary work completed in season to enable the plaintiff to complete his within the time limited by the contract is a sufficient excuse for the plaintiff for not completing the work within the time."

The very object of one of the questions objected to in the case at bar was to show that the plaintiff's work *could not* be performed within the required time by reason of the failure of defendant's employés to have the building in such a state of progression as to allow the measurement of the stairs to be taken in time for plaintiffs to complete their contract. Whether or not the measurements could be taken from the plans and specifications, the court is not called to pass upon. But it is an issue raised by the pleading, and the plaintiffs had a right to enlighten the jury upon that subject; for if such was the fact, and the further fact appeared that the building was not sufficiently advanced to permit the measurement in time for the plaintiffs to complete their work within the prescribed time, then it is brought within the general rule, that he who by his negligence prevents a thing from being done shall not avail himself of the non-performance he has occasioned.

An investigation of the testimony in this case also goes to show that it was the understanding between the contracting parties that *actual* measurements were to be taken. This we gather from the testimony of the defendant himself. Among other things, on page 38 of the record, he says:

"Mr. Carter then offered me what I considered very good figures for the work, and I says to him, 'Mr. Carter, that is a big advantage in dealing with you because I have had some trouble about misfits when you deal by correspondence and get your work by plans; it has caused me a great deal of annoyance at my house and the parties were not there to get the actual measurements, and I prefer to give you the contract because you are here, and a man of that sort can figure and make his calculations.'"

So that by his own statement it appears that the measurement was not to be made by the plans and specifications, and that his principal inducement in entering into the contract with the plaintiffs was that the work could be done

by actual measurement. Under all the circumstances of the case we do not think any principle of law would have been violated by the admission of the testimony proffered.

Plaintiffs also complain of certain instructions given to the jury by the court as being a violation of § 16, art 4 of the constitution of Washington. Said article provides as follows:

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

It seems to us the framers of the constitution could not have more explicitly stated their determination to prevent the judge from influencing the judgment of the jury on what the testimony proved or failed to prove. It is more restrictive than the constitutional provisions of any other state. The California constitution provides that the judge may state the testimony; but our constitution evidently intends that the judge shall make no reference to the testimony for the purpose of informing the jury what it proves or does not prove, but shall content himself with declaring the law; for, after the inhibition in regard to his commenting upon the facts, this negative proposition occurs, "but shall declare the law." This need not hamper the judge or embarrass him in giving the jury the law applicable to a case. He may state to the jury, "If you find from the evidence that such a state of facts exists the law is as follows," etc.; or, "If you find that such a state of facts is conclusively proven, the law is as follows," etc. But to tell the jury there is no dispute in the testimony on a certain point, or that anything is conclusively proven, is going too far. The judge might think from the testimony that it was conclusively proven, and the jury might come to a different conclusion; or the jury might conclude there was some dispute in the testimony. It is the exclusive province of the jury to determine from the evidence what

fact is proven conclusively or otherwise, and to analyze the testimony and to determine for themselves whether there is any dispute in relation to all, or any, of the facts concerning which testimony is offered. It is no doubt competent for the judge to instruct the jury what facts are placed in issue by the pleadings—that is a question of law; but the testimony in respect to these facts, when it is legally submitted to the consideration of the jury, must be left to their undivided and unbiased consideration. The argument of the respondent would have been applicable in the absence of the constitutional limitation; but this court must give some effect to a provision which is incorporated in the fundamental law of the state.

In view of these errors, without discussing the other errors assigned, the judgment will be reversed and the case remanded to the lower court, with instructions to proceed in accordance with this opinion; and it is so ordered.

ANDERS, C. J., and SCOTT and STILES, JJ., concur.

HOYT, J.—I concur in the result, but desire to say that I do not think the language of the opinion as to the charge of the court was called for in this case, and, in so far as it decides that it is error for the court to instruct the jury that a certain fact is undisputed by the evidence, or that all the evidence as to any fact is on one side, I dissent; as, in my opinion, such instructions would not contravene the provisions of our constitution.