[No. 14074.   Department Two.   October 13, 1917.]

R. CORMIER, *Respondent*, v. MARTIN LUMBER COMPANY, *Appellant*.[1]

CUSTOMS AND USAGES—GENERAL CUSTOM—PLEADING—SUFFICIENCY. In an action for wages, the complaint is sufficient where it alleges the existence of a custom in Washington logging camps to the effect that employment on "straight time" included pay during shut downs, and that plaintiff was employed according to such custom; the presumption being that parties interested knew of and contracted according to a general custom.

SAME—EVIDENCE—ADMISSIBILITY.  In an employment on "straight time" evidence is admissible of the general custom as to the meaning of the contract.

SAME—QUESTION FOR JURY.  Where there was some evidence of a general custom, its weight was for the jury.

MASTER AND SERVANT—EMPLOYMENT—DURATION—EVIDENCE—SUFFICIENCY.  Where plaintiff was employed in a logging camp on "straight time" under a general custom in such case to pay for time during the shut downs, and upon a shut down was not paid off with the other men or his hiring discontinued, the jury was justified in finding that his wages continued until he was notified to the contrary; Rem. Code, § 6560, providing that when any such laborer shall cease to work the wages due shall be forthwith paid.

APPEAL—REVIEW—VERDICT.  A verdict for unliquidated damages upon conflicting evidence is conclusive on appeal, even if against

[1]Reported in 167 Pac. 1105.

the weight of the evidence or under a strong presumption that it was arrived at by striking an average.

APPEAL—REVIEW—ERROR FAVORABLE TO APPELLANT. A new trial for inadequate damages will not be granted on the application of a party against whom they were awarded.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In an action to recover wages under a general custom to pay "straight time," the defendant is not prejudiced by an instruction precluding recovery in the absence of such custom unless there was a separate agreement that his time was to continue, although there was no evidence of any such agreement; since it was favorable to defendant.

CUSTOMS AND USAGES—CONSTRUCTION OF CONTRACT — EVIDENCE — SUFFICIENCY. Upon an issue as to a general custom as to the meaning of a contract to pay wages on "straight time," the plaintiff is not required to establish the custom by clear and satisfactory evidence, but only by a preponderance of the evidence.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered November 25, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Dysart & Ellsbury* and *C. D. Cunningham,* for appellant.

*A. A. Hull* and *Troy & Sturdevant,* for respondent.

HOLCOMB, J.—This action was brought by respondent to recover from appellant the sum of $1,090, claimed to be due him as wages. The respondent is a logger of thirty-four years' experience. He has worked for this length of time in the logging woods of Western Washington, and for twenty-four years has held the position of foreman, either on the boom or in the woods. In August, 1912, he entered into the employment of the appellant. He was hired as foreman of the logging camp, at the rate of $150 a month "straight time." Concerning these terms of employment, there is no dispute; the difference is as to their meaning. On or about August 26, 1913, Cormier was still in the employ of the company. At that time he was given orders by the manager of the company, one Martin, to close down the camp. Respondent testified that Martin told him that the camp would

be shut down for thirty days. This is denied in the testimony of Martin. At all events, Cormier carried out these orders, and on the 26th of August the camp was closed.

The chief point in controversy is, as has been stated before, the meaning given by the plaintiff and by the defendant to the term "straight time." It is the contention of the plaintiff that there is a general custom among the logging companies in Western Washington that, in employing men to work as foremen at a certain amount "straight time" means that, in case of a shut-down of the camp for any period whatever, the salary of the foreman so employed continues during the shut-down, unless, at the time of the shutdown, he is notified that his services are no longer wanted. The appellant claims that such a custom does not exist, but says that straight time means that the foreman is employed on a month-to-month basis rather than by the day, as the other men are employed, and that the only periods of shutdown that are covered are those which are customarily made at Fourth of July and Christmas, for five to ten days, and such other temporary shut-down times as are the result of accident or necessary repairs.

On August 26, when the camp was shut down, all the men but Cormier were given their time. The cause of this exception is not made plain by the appellant. Nor is it at all clear why his time was not offered to him, as he made several calls at the office of the company and wrote the company letters in which he gave his address where he might be found. It does appear that when, in the middle of February following, Cormier asked the company for money, he was given $100, although appellant admits owing him at the time $150. Respondent made visits to the office of the company in September, December, January, and February. In September he was told by Althouser, the head bookkeeper, that Martin had gone to California; that the camp would not open for some time, and that he would notify him (Cormier) in time so that a crew could be gotten together. It also appears

that, at various times, letters were written to Cormier asking
him about the employment of certain men, terms, etc. At
the time of his visit to the office in February, he overheard
a conversation between Althouser and one Greenwood, who
was the foreman of the mill for the appellant. Greenwood
said that he thought that he was getting straight time and
that he was to be paid right along, but that it began to look
as if he would not get it. This aroused the suspicion of
Cormier, and he asked Althouser if the company observed
the straight-time rule. He was told that it did not. When
the respondent told him that he had been employed at
straight time, he was told to take it up with Mr. Martin.
As soon as possible—about the middle of March, 1914—Cor-
mier arranged a meeting with Martin in Centralia. There
the matter of the terms of his employment was discussed and
Martin, it is claimed, repudiated his agreement on the ground
that he could not afford to pay him because of hard times
and heavy taxes. He refused to pay the respondent any
more than the amount still unpaid for the month of August,
1913.

During the period from August to March, the respondent
refused employment with other logging companies, thinking
he was in the employ of the appellant.

The respondent in this action produced as witnesses two
of the leading logging men in the Northwest, Mr. Thomas
Bordeaux and Mr. Mark Reed. Bordeaux is the president
of the Mason County Logging Company, and is also an offi-
cer in the Mumby Lumber Company. The two companies
employ about six hundred men. He testified that the cus-
tom as contended for by the plaintiff was a general one, not
only in Western Washington but on the Columbia river.
Reed is the president of the Simpson Logging Company,
which operates on Puget Sound and in the Grays Harbor
district. He also testified as to knowledge of this custom.
The witnesses produced by the appellant all stated that they
did not know of this custom; but it is interesting to note

that, in almost every case, these witnesses testified that, in case of a shut-down, they always notified their foremen the same as they did the other men. In the case here, Cormier was not paid off and not notified of his discharge. Section 6560, Rem. Code, provides:

"And when any laborer performing work or labor as above shall cease to work whether by discharge or by voluntary withdrawal the wages due shall be forthwith paid either in cash or by order redeemable in cash at its face value on presentment. . . ."

There was a verdict in favor of the respondent in the sum of $491.95. Motions for judgment notwithstanding the verdict and for a new trial, seasonably made, were overruled.

I. It is urged as error that the court overruled the objection to the introduction of any evidence on the ground that the amended complaint of respondent failed to state a cause of action. The sufficiency of the amended complaint had previously been challenged by a demurrer, which was overruled. The challenge to the sufficiency of the complaint was based upon the contention that, in order to make a custom or usage valid and binding upon both parties, it must affirmatively appear that there is such custom and usage, that the parties contracted with reference to it, and that it was known to both contracting parties. The amended complaint alleged that such custom and usage existed in the logging woods of Western Washington, and that, in accordance therewith, respondent was employed as alleged. This was a sufficient averment; and of a general custom, all persons interested in the subject-matter are presumed to know.

Where a general custom exists, the presumption is that the parties to a contract are acquainted with it and contract with reference to it. *United States Life Ins. Co. v. The Advance Co.*, 80 Ill. 549; *Robinson v. United States,* 13 Wall. 363; *Bliven v. New England Screw Co.*, 23 How. 420; *Armstrong v. Chemical Nat. Bank*, 83 Fed. 556.

Evidence of usage or custom is admissible for the purpose

of ascertaining the sense and understanding of parties by their contracts which are made with reference thereto. *Sampson & Lindsay v. Gazzam*, 6 Porter (Ala.) 123, 30 Am. Dec. 578; *Bardwell v. Ziegler*, 3 Wash. 34, 28 Pac. 360.

The demurrer to the amended complaint and the objection to the introduction of evidence under it were properly overruled. There being some evidence of a custom, its weight was for the jury. *Fish v. Crawford Mfg. Co.*, 120 Mich. 500, 79 N. W. 793.

II. Appellant insists that, under the terms of hiring, it had a right to rely upon the understanding that respondent had been discharged the same as all its other employees; that his employment at $150 per month was a hiring from month to month, which renewed the contract each month that his services were required; and, on the other hand, discontinued it each month they were not required and furnished. That is not the case when such custom as was here relied upon and shown existed. As the usage entered into the contract, respondent's hiring did not cease until it was discontinued by one or the other of the parties. The jury were authorized to find from the evidence that neither party discontinued the employment until March, 1914. 26 Cyc. 974; *Kershner v. Henderson*, 48 Wash. 228, 93 Pac. 323.

III. Error is assigned on the amount of the verdict. It is asserted that respondent was entitled to recover either the amount sued for—$1,090, or nothing. The verdict of a jury upon conflicting evidence is conclusive on appeal even if against the weight of the evidence. *Norman v. Bellingham*, 46 Wash. 205, 89 Pac. 559; *Washington Trust Co. v. Keyes*, 79 Wash. 61, 139 Pac. 638, Ann. Cas. 1916 A 279. A new trial for inadequacy of damages will not be granted on the application of the party against whom they are awarded. 29 Cyc. 848; *Strickland v. Hutchinson*, 123 Ga. 396, 51 S. E. 348; *Wolf v. Goodhue Fire Ins. Co.*, 43 Barb. (N. Y.) 400; *Alderman v. Cox*, 74 Mo. 78; *Wright v. Griffey*, 44 Ill. App. 115; *Godefroy v. Hupp*, 93 Wash. 371, 160 Pac. 1056.

In suits for unliquidated damages where the jury give a round sum, the amount of their verdict is in many cases necessarily the result of concession and compromise. In such cases, a verdict will not be set aside, although the amount of the verdict itself raises a strong inference that it was arrived at as the result of striking an average. 2 Thompson on Trials, § 2606; *St. Louis & S. E. R. Co. v. Myrtle,* 51 Ind. 566.

IV. An instruction is complained of which was:

"But, if on the other hand you find that the custom was that his salary did not continue during an indefinite shut-down, or if you find that no positive custom has been proven either way, then you will not allow the plaintiff for any time after the first day of August, unless you find that there was a private understanding between them that his time was to continue after that time."

It is contended that this instruction submitted to the jury an issue upon which there was no proof. Nevertheless, it was not prejudicial to appellant; in fact, it was favorable to it. By it the jury were told that, if they should consider no custom proven, they should not allow respondent for any time after August 1, unless they should further find that the parties had a "private understanding"—or agreement—that the time of respondent was to continue after that time. The issue between the parties was, What was the agreement and its effect? The question of custom was invoked as entering into and throwing light upon the contract. The jury were simply told that, if there was no custom, the respondent could not recover, unless there was a specific agreement that in the event of a shut-down his time should continue beyond the time of the shut-down.

V. Other errors are urged upon the giving and refusing of instructions. The instructions given fairly stated the law as applied to the facts of the case and in issue between the parties. Appellant offered instructions to the effect that, if a custom or usage is to be established, it must be by evidence that is "clear and satisfactory." The court instructed that

such custom might be shown by a preponderance of evidence. In such a case as this, being merely the proof of a contract and explaining its terms and effect, preponderance of evidence to establish it is sufficient. *Smith & Wallace Co. v. Lunger*, 64 N. J. L. 539, 46 Atl. 623.

We find no reversible error. Judgment affirmed.

ELLIS, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.