CHARLES E. PENCE, Respondent, v. THE CALIFORNIA MINING COMPANY, a Corporation, Appellant.

No. 1514.    (75 Pac. 934.)

1. **Master and Servant: Chance Verdict.**
Under Revised Statutes 1898, section 3292, providing for the vacation of a verdict and a new trial where the verdict is found "by a resort to the determination of chance," the determination, to have such effect, must have been the means of inducing one or more jurors to assent to the verdict, and hence a resort to chance to obtain an average sum will not vitiate the verdict, if, notwithstanding, the jury afterward continue to deliberate in good faith, and finally arrive at their verdict as a result of such deliberation.

2. **Same: Burden of Proof.**
The burden of proof to show that the assent of one or more jurors was obtained by the determination of chance, or that it was in fact a chance verdict, is on the party assailing the same.

**3.  Same: Affidavits Held Insufficient.**

Affidavits of jurors in an action where defendant seeks to set aside the verdict because found by resort to chance considered, and *held* insufficient to establish the fact of a previous agreement among the jurors to abide by the quotient obtained by the process of addition and division of several sums as the amount of their verdict.

**4.  Same: Average Verdict.**

An average verdict is not objectionable where the jurors do not agree before voting to be bound by the result, but accept the average only after further deliberation and discussion as a fair and reasonable finding.[1]

**5.  Same: Negligence: Sufficiency of Evidence: Question for Court or Jury.**

Before the question of negligence becomes one of law for the court, the facts shown by the evidence must be such as that all reasonable men must draw the same conclusions from them; and, if the facts proven are such as reasonable men may fairly differ about, the question of negligence is for the jury to consider.[2]

**6.  Same : Evidence : Rule or Custom : Admissibility.**

In an action against a mining company for injuries to an inexperienced miner, claimed to be due to a failure to instruct him how to perform his services, evidence as to what the usual custom was that prevailed in the mines in Utah and at defendant's mine in respect to having an experienced miner work with one whom the employer knows to be inexperienced was admitted to show what precautions were generally taken in such cases, as bearing on the degree of care which defendant exercised for plaintiff's safety. *Held*, that the evidence was admissible for this purpose, without showing that the custom had been in existence long enough to constitute it a common-law custom.[3]

(Decided March 18, 1904.)

Appeal from the Third District Court, Summit County.
—*Hon. C. W. Morse,* Judge.

[1] Archibald v. Kolitz, 26 Utah 226, 72 Pac. 935.
[2] Lowe v. Salt Lake City, 13 Utah 91, 98, 44 Pac. 1050, 1051, 57 Am. St. Rep. 708.
[3] Fritz v. Western Union Tel. Co., 25 Utah 263, 71 Pac. 209.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*Messrs. Snyder & Wight* for appellant.

*Messrs. Powers, Straup & Lippman* and *James S. Perry, Esq.,* for respondent.

BARTCH, J.—This action was brought to recover damages for personal injuries which the plaintiff alleges he received because of the negligence of the defendant. It is alleged in the complaint, among other things, that the plaintiff, at the time of the accident which resulted in his injury, was a young man about twenty-two years old, wholly inexperienced as a miner, unfamiliar with drilling and blasting and the use of powder and fuse; that he applied to the defendant's foreman for work at its mine; that the foreman, knowing his inexperience, assigned him to work drilling and blasting alone in a tunnel, without giving him any instructions how to perform the service, or in the use of powder and fuse, or as to the dangerous character of the employment; that while so at work alone, during his first shift, in attempting to blast he used fuse which had been cut and capped, and had been pointed out to him by the foreman, and that, the fuse being too short, one of the blasts went off, and caused the plaintiff's injuries, he not having had time to get out of the reach of danger. The answer avers that at the time of his employment the plaintiff represented himself as a skilled miner, denies the allegations of negligence in the complaint, and avers that the plaintiff's misfortune was the result of his own negligence, and that he assumed the risk of his employment.

While there is some conflict in the evidence as to

knowledge of the foreman of the inexperience of the plaintiff, the preponderance thereof appears to sustain the allegations of the complaint on that point.    Without referring to the evidence in detail, it is sufficient to say that it appears to support all the material allegations of the complaint, and the jury must have found such allegations to be true.    This being a case at law, we are bound by the findings of the jury so far as the facts are concerned.

The appellant company, in the first instance, insists, however, that the jury arrived at their verdict by chance, and in seeking to set it aside and obtain a new trial invokes the aid of the statute, which, in section 3292, Rev. St. 1898, so far as material here, provides that a verdict may be vacated and a new trial granted for the "misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any questions submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors." Under the provisions of the statute a verdict of a jury may be set aside and a new trial granted in any case where such verdict was found "by a resort to the determination of chance," and "such misconduct may be proved by the affidavit of any one of the jurors."    The "determination of chance," however, to have such effect, must have been the means of inducing one or more jurors to assent to the verdict.    It follows that the mere fact that the jury, in a given case, may, during their deliberations, have resorted to chance to obtain an average sum, will not vitiate their verdict, if, notwithstanding such sum, they thereafter continue to deliberate in good faith, and finally arrive at their verdict as a result of fair and honest deliberation, free of any inducement from the resort to chance.    The burden of proof to show that the assent of one or more jurors was obtained to the verdict by the determination of

chance, or that it was in fact a chance verdict, is upon him who assails the verdict.

The appellant, in support of its motion for a new trial, and to show that the jury returned a chance verdict, filed the affidavit of the juror Lawrence E. Eldredge, who did not concur in the verdict, wherein, so far as material here, it appears that, in the consideration of the case the jurors "first took a vote on the question as to whether or not there was a cause of action;" that "on this question seven of the jurors voted in the affirmative" and one "in the negative;" that "after some discussion it was proposed by one or more and consented to by the others of the seven who voted in the affirmative that a ballot be taken, each one writing on a slip of paper the amount of damages he thought the plaintiff entitled to, and the sum divided by seven to be the verdict;" that this was done, and resulted in the sum of $14,400, the amount of the verdict; that "it was then suggested by one juror that the amount of damages be placed at $14,000," which was rejected; that "another juror proposed that $15,000 be the amount awarded," which was also rejected, it being contended that they had agreed to this method, and should stand by the agreement; and that the "verdict was then made up, and the amount $14,400" written into it, which "amount they thus agreed they would award to the plaintiff by their verdict." The appellant also filed an affidavit from one of the concurring jurors, Wm. Beard, in which occurs the expression: "And the quotient obtained by this operation was, as by previous agreement, the amount awarded to the plaintiff as damages in said action." The use of this expression, however, in an affidavit made by the same affiant for the respondent, was explained as follows: "Since the making of said [first] affidavit my attention has been called thereto, and especially to the language therein used, 'And the quotient obtained by this operation was, as per previous agreement, the amount awarded, etc.' At the time I made the said affidavit I did not observe the said

language above quoted, nor notice the effect thereof, especially the words 'as per previous agreement,' for that it is not true that before said quotient was declared that there was any agreement or understanding that the said jury, or any member thereof, should be bound by such result as and for the verdict of the jury, but I, as well as each and every member of the jury, was at liberty to accept or reject the said amount; and I do not wish to be understood as saying or declaring that there was any previous agreement, or any binding effect on any juror, to accept said amount so derived by the said quotient amount, and to make that the verdict of the jury.'' In rebuttal the respondent filed the affidavits of the seven concurring jurors, including one from the juror Wm. Beard, in each of which, after stating what was done by them to obtain an average amount of what each respective juror thought ought to be the amount of the verdict, are contained statements as follows: ''Before the said amount was thus ascertained, as aforesaid, there was no agreement or understanding of any kind that the said amount so resulting from said addition and division, as aforesaid, should be the amount of the verdict, nor was I or any of the jurors bound thereby, but I and each and all of the jurors was at liberty to accept or reject the said amount, or to add thereto, or subtract therefrom, as I or he thought fit and proper. After said amount was so found, as aforesaid, the same was then discussed by the said jurors, some expressing opinions that the verdict ought to be more than said amount, and in which said discussion we talked over the nature and the extent of the plaintiff's injury, and the permanency thereof, and took into consideration the loss of his leg, the substantial loss of one eye, the loss of his earnings, the pain and suffering necessarily attending his said injuries, the charge of the court, and we considered and discussed quite fully the said loss and injury in detail, and then, after such discussion, one of the jurors moved that the amount that had been found by the said addition and division, as aforesaid, be made

the amount of the verdict, while yet another moved that the said verdict be made $15,000; but finally it was agreed by the said concurring jurors to make the verdict the said amount of $14,400, which was done, the said seven concurring members of the jury having no difficulty whatever in agreeing that a verdict should be rendered for the plaintiff, and most of the time the dissenting juror did not seriously contend against it. But we were considering and determining the amount of the said verdict for about, or close to, two hours, during which time we went over the subject-matter in all its situations, and had some difficulty in agreeing on the amount; but when we did finally agree to the said amount that was rendered as our verdict each and all of the seven concurring jurors expressed complete and entire satisfaction therewith.''

From a careful examination of all the affidavits it is clear that the appellant has failed to establish its contention that the jury returned a chance verdict, or
3	that there was a previous agreement among the jurors to abide by the quotient obtained by the process of addition and division of the said several sums as the amount of the verdict. Considering the facts stated in the various affidavits, we must assume that neither one of the concurring jurors was, or felt himself, bound by the result of the resort to the determination of chance. While such practice on the part of a jury must, under all circumstances, be discouraged as improper, still under the facts appearing in this case we can not say that their misconduct was such as to vitiate the verdict. ''The method of arriving at the amount of the fine, of the damages where they are unliquidated, or the length of the term of imprisonment in criminal cases, whereby each juror puts a number into a hat, and all the numbers so put in are added up and the sum divided by twelve, vitiates the verdict, where the jurors agree in advance to abide by the result. But it is otherwise where the amount which each juror puts into the hat is a mere proposition, and there is no pre-

vious agreement to abide by the result.   The ground of objection to the jurors binding themselves in advance to the amount to be determined by addition and division by twelve is that such agreement cuts off all deliberation on the part of the jurors, and places it in the power of a single juror to make the quotient unreasonably large or small by naming a sum extravagantly high or ridiculously low.   It is not material on what particular scheme of averages this 'quotient verdict' is devised; the vitiating fact is the agreement in advance to abide by the result."   2 Thomp. Tr., sec. 2602.   In 22 Ency. Pl. & Pr. 856-858, it is said:   "A jury is not allowed to substitute for the exercise of that deliberate judgment and reflection which the law requires any resort to chance devices, the contingent result of which is allowed to determine what its verdict shall be.   If the jury in a civil or criminal case fixes the respective amounts of recovery or term of imprisonment by setting down the respective amounts or periods which each juror favors and dividing the aggregate by twelve, agreeing in advance to abide by the result, the verdict will be held invalid.   But where there is no previous agreement to abide by the result so reached, the verdict will not be set aside.   So it has been held that an averaged verdict was not objectionable where the jurors did not agree, before voting, to be bound by the result, but accepted the average only after further deliberation and discussion as a fair and reasonable finding."   Hayne, New Trial, sec. 71; Archibald v. Kolitz, 26 Utah 226, 72 Pac. 935; McDonnell v. Pescadero Stage Co., 120 Cal. 476, 52 Pac. 725; Hunt v. Elliott, 77 Cal. 589, 20 Pac. 132; City of Kinsley v. Morse, 40 Kan. 588, 20 Pac. 222; Knight v. Fisher, 15 Colo. 176, 25 Pac. 78; Watson v. Reed, 15 Wash. 440, 46 Pac. 647, 55 Am. St. Rep. 899; The St. L. & S. E. Ry. Co. v. Myrtle, 51 Ind. 566; Hamilton v. Des Moines V. R. R. Co., 36 Iowa 31; Dodge v. Carroll, 59 N. H. 237.

The appellant also insists that the court erred in overruling its motion for a nonsuit, made at the close of the plaintiff's evidence. The motion was based upon various grounds, among them that the evidence did not show that the "defendant was negligent in setting the plaintiff to work in the particular place" where he was injured, or that it was the duty of the defendant to warn the plaintiff of danger in his employment; and that the evidence shows that the plaintiff was guilty of contributory negligence, and assumed the risk of danger incident to the employment. Considered in the light of the facts disclosed by the plaintiff's testimony, none of the grounds stated in the motion can be of avail to the appellant. Without referring to the evidence in detail, it is sufficient to say that the proof was ample to require the submission of the case to the jury, and therefore the court did not err in denying the motion. "Before the question of negligence becomes one of law for the court, the facts shown by the evidence must be such that all reasonable men must draw the same conclusions from them. If the facts proven are such that reasonable men may fairly differ as to whether or not there was negligence, the question is one for the jury to consider." Lowe v. Salt Lake City, 13 Utah 91, 98, 44 Pac. 1050, 1051, 57 Am. St. Rep. 708. The facts in evidence when the plaintiff rested his case were so manifestly against the contention of the appellant in its motion for nonsuit, and the law applicable in such cases has so frequently been declared by this court, that an extended discussion of the various grounds of the motion herein is not deemed necessary or important.

At the trial there was some evidence introduced to show what the usual rule or custom was that prevailed at the mines in this State and at the defendant's mine in respect to having an experienced miner work with one whom the employer knows to be inexperienced. This evidence was objected to by the defendant upon the ground, among others, that it was not shown that such rule had prevailed for such a length of

time as to give it the force of a common-law custom. The appellant complains of the action of the court in overruling the objections to such testimony. We perceive no error in the rulings in relation thereto. The evidence in question was not introduced for the purpose of showing that a technical common-law custom prevailed respecting the employment of inexperienced miners, although the word "custom" may have been used by counsel and witnesses in questions and answers. That proof was offered and admitted merely to show what precautions were generally taken in such cases, as bearing upon the degree of care which the employer had exercised in regard to the safety of an employee whom he knew had no experience in the work he was to perform. For that purpose the evidence was admissible, without showing that the rule or custom had been in existence for the length of time required to constitute it a common-law custom. This court, as to objections to similar proof, held likewise in Fritz v. Western Union Tel. Co., 25 Utah 263, 71 Pac. 209.

A careful examination of all the questions presented in this case reveals no reversible error.

The judgment is affirmed, with costs.

BASKIN, C. J., and McCARTY, J., concur.