**Daniel S. DAY, Plaintiff and Appellant,**

v.

**Jim PANOS and Roxanne Panos, Defendants and Respondents.**

No. 18920.

Supreme Court of Utah.

Jan. 17, 1984.

Scott R. Wangsgard, West Valley City, for plaintiff and appellant.

F. Robert Bayle, Salt Lake City, for defendants and respondents.

DURHAM, Justice:

This is an appeal from the denial of the plaintiff's motion for a new trial under Utah R.Civ.P. 59(a)(2) and (5). Because we find the verdict is a "chance" verdict in violation of Rule 59(a)(2), we reverse the trial court's denial of the motion for a new trial. We do not, therefore, reach the question of whether a new trial is warranted under Rule 59(a)(5).

In the original action, a dog bite case, the jury's verdict attributed 74% of the negligence to the plaintiff. The trial judge entered judgment on the verdict of no cause of action. The plaintiff contends the verdict was rendered by chance in violation of Rule 59(a)(2). We agree. Rule 59(a)(2) provides that a new trial may be granted for: "Misconduct of the jury; and whenever one or more of the jurors have been induced to assent to any general or special verdict ... by resort to a determination by chance ... such misconduct may be proved by the affidavit of any one of the jurors."

The plaintiff's contention is based on an affidavit of the jury foreman that sets forth the process used by the jury in determining its special verdict. Paragraph 3 of the affidavit states that each juror submitted a slip of paper on which he or she wrote the percentage of negligence attributable to the plaintiff and the percentage attributable to the defendants. These

figures, paragraph 3 continues, then were added together and the totals were divided by the number of jurors to arrive at the final determination of the parties' negligence.

Likewise, paragraph 4 of the affidavit provides that each juror submitted slips of paper indicating the amounts of general and special damages to which the juror felt the plaintiff was entitled. These figures, according to the affidavit, also were added together, and the totals were divided by the number of jurors to determine the average sums for general and special damages.

These descriptions in the affidavit meet the definition of a chance verdict as articulated by this Court in *Wright v. Union Pacific R.R.*, 22 Utah 338, 62 P. 317 (1900). In *Wright*, we held that where a verdict is determined by each concurring juror's separately fixing the amount to be awarded, then the various amounts being added together and the sum divided by the number of concurring jurors, the verdict is a chance verdict.

 It is well settled that what makes a quotient verdict subject tó relief under Rule 59(a)(2) as "a determination by chance" is not the process of averaging, but the jurors' prior agreement to be bound by the outcome of the computation. *See, e.g., Mitchell v. Arrowhead Freight Lines, Ltd.*, 117 Utah 224, 214 P.2d 620 (1950); *Pence v. California Mining Co.*, 27 Utah 378, 75 P. 934 (1904); *Wright v. Union Pacific R.R., supra*, 76 Am.Jur.2d *Trial* §§ 1135–36 (1975). The juror affidavit filed with the motion for a new trial in this case complies with this rule. The affidavit says:

> Prior to arriving at the figures described in paragraphs 3 and 4 of this Affidavit, each juror agreed that we would be governed by the figures arrived at through the process of averaging the total of each juror's individual opinion.

Thus, the affidavit states the jurors agreed in advance to be bound by the averages attained. The juror, therefore, was induced to assent to the special verdict by resort to a determination of chance. The

dissenting opinion of Chief Justice Hall suggests that some evidence of "inducement" beyond an agreement in advance must be proved before the requirements of Rule 59(a)(2) are met. Clearly, the agreement by all jurors to be bound, by itself, may constitute an inducement to one or more jurors to enter the undertaking. Otherwise, it appears that some form of physical or verbal coercion would always be necessary before jury misconduct could be shown.

 It is true, as pointed out in Justice Oaks' dissent, that a trial judge is free to disbelieve evidence, including affidavits. But any ruling of the trial judge must contain some basis in the record, and the party opposing the motion for a new trial failed to offer any basis for controverting or disbelieving the uncontroverted testimony of the jury foreman. Even if the trial judge distrusted such testimony "on principle," without more, the proper procedure would have been to require the witness to testify in person to permit further investigation of the misconduct set forth in the affidavit. The dissent seems to suggest that the moving party was required to produce more in this case than the affidavit showed. That suggestion, however, is directly contrary to the language of Rule 59, which specifically permits the use of affidavits and specifically defines the kind of misconduct described by this affidavit. The fact that the affidavit may be inadequate to show the state of mind of any juror besides the affiant is also not relevant, since the rule defines misconduct as an inducement to assent on the part of "any *one* or more of the jurors." The plaintiff's motion for a new trial is granted, and the judgment of the lower court is reversed.

STEWART and HOWE, JJ., concur.

HALL, Chief Justice (dissenting):

Plaintiff's contention that the verdict was rendered by chance, in violation of Rule 59(a)(2), Utah R.Civ.P., is founded solely on the content of an affidavit signed

by the jury foreman. The affidavit was prepared and presented by the plaintiff and is partially couched in the specific language of the rule in an apparent effort to show a violation thereof. Nevertheless, it fails to set forth what the rule actually proscribes, i.e., an "inducement" that results in an "assent" to a verdict by chance.

The foreman's statement presumed to speak for seven other jurors, none of whom joined him by affidavit. His affidavit did not show how, when or under what circumstances any one of the jurors was "induced" or that they even "assented to" (in the language of the rule) the challenged verdict. Furthermore, there was nothing showing that pressure of any kind was applied to induce anyone to assent to anything.

The rule recites that a new trial "may be granted." It, therefore, compels the conclusion that the affidavit of the jury foreman was vulnerable to attack and subject to disbelief or rejection by the trial court as was the case here. It is axiomatic that the affiant is burdened with the necessity of persuading the trial court that he is accurate in stating facts that call for reversal under the rule and of convincing the court of his credibility.

In the instant case, the jury foreman appears to have fallen short in his burden of persuasion, as is reflected in the trial court's denial of the motion for a new trial. Except by proof of misconduct under the rule, the jury cannot and should not impeach its own verdict.[1]

The long-standing rule of appellate review in this Court is that rulings of the trial court presumptively are correct and irreversible except for a showing of clear abuse of discretion incident to the ruling. In this case, the trial court obviously either disbelieved the sole affidavit before it or appropriately found the affidavit wanting by its failure to attest to any "inducement," which is the predicate of the rule itself and in fact is the basis for the decision in the solitary case cited by the plaintiff in support of his contention.[2] In any event, there is nothing about the facts and circumstances of this case that warrants departure from the traditional presumption of the correctness of the trial court's denial of the motion for a new trial and its entry of judgment on the verdict.

Plaintiff relies almost entirely upon *Wright v. Union Pacific R.R.*,[3] where, as here, a motion for a new trial was involved and granted. However, unlike the instant case where only one affidavit supported the motion, there were numerous affidavits, some supporting the motion and others in opposition to it. In weighing the affidavits, the court granted the motion on the basis that the "inducement" within the meaning of the rule was evident. Plaintiff here fails to point this out, and the foreman's affidavit in this case does not establish the existence of any "inducement," only that the jury chose various amounts and divided the total by the number of jurors in order to reach a verdict.

The court's decision in *Wright* is not controlling here because of the complete factual differences. It has also been critized by subsequent opinions. In *Lambourne v. Halfin*,[4] the dissent defends verdicts reached by presumably honorable juries, that are not clearly tainted with an element of gambling in reaching a result. In that case, a formula involving an averaging of the jurors' convictions into a consensus of mutual agreement was employed. In *Archibald v. Kolitz*,[5] the Court discussed *Wright* and *Lambourne* and *affirmed a denial of a motion for new trial* purportedly supported by affidavits, as is the case here. The ratio decidendi in that case related to *lack of proof* as to when the jury finally merged the convictions of the

**1.** *Stringham v. Broderick*, Utah, 529 P.2d 425 (1974).

**2.** *Wright v. U.Pac. R.R.*, 22 Utah 338, 62 P. 317 (1900).

**3.** *Id.*

**4.** 23 Utah 489, 65 P. 206 (1901).

**5.** 26 Utah 226, 72 P. 935 (1903).

individual jurors into a final and dispositive coalition of mutual agreement. In *Archibald*, the Court stated that *Wright* and *Lambourne:*

> *[C]learly* showed that the verdicts were determined by chance, but in the case at bar, the allegation that the verdict was so determined does not clearly and sufficiently appear from the affidavit and the trial court, therefore, did not err in refusing to grant a new trial on that ground.

This language appears to apply in the instant case.

The plaintiff indulges a fallacy in suggesting that one juror's affidavit, absent facts showing violation of the rule, can force the granting of a new trial. The affidavit amounts to a conclusion to the effect that the jurors agreed to an "average" verdict without "any one or more of the jurors having been induced to assent to a verdict." The claim is devoured by the terms of the rule, since there is no claim or showing that any of the jurors were "induced" to agree to anything.

Compromise is the lifeblood of jury verdicts. The give-and-take consensus of jury members is the secret of the system, and proof of its wisdom and verity is the fact that in countless instances a "deadlocked" jury is returned by the court to continue its deliberation with an admonition from the bench to compromise its differences, if possible. Generally, a consensus results where there was an impasse before.

Although not dispositively comparable with the instant case factually, the case of *Mitchell v. Arrowhead Freight Lines*[6] approved of a legitimate "average" verdict, not vulnerable to Rule 59(a)(2). In that case, the verdict was considered without the scope of the rule, and we said the affidavits filed in alleged support of a motion for a new trial proved as a matter of fact that the jurors had not decided by chance.

**6.** 117 Utah 224, 214 P.2d 620 (1950).

I would affirm the verdict and judgment of the trial court.

I also concur in the dissenting opinion of Justice OAKS.

OAKS, Justice (dissenting):

I agree with the majority's statement that a verdict must be set aside when the court is satisfied that the jurors agreed in advance to be bound by the quotient of an averaging process, making their verdict "a determination by chance" within the meaning of Utah R.Civ.P. 59(a)(2). However, I dissent from the majority's holding on the manner in which advance agreement can be established on a motion for new trial.

I assume the experienced district judge in this case was familiar with and applied the long-standing rule of law on quotient verdicts. I believe the motion for new trial was denied in this case because the court disbelieved the conclusory assertion of the fact of advance agreement in the affidavit of a single juror. By holding that a trial court must grant a new trial on such a flimsy basis, the majority makes jury verdicts too vulnerable to impeachment.

The long-standing policy against attempts to undermine the integrity of jury verdicts has limited the grounds on which a verdict can be impeached and, even on those grounds, requires a stringent burden of proof. Most states do not even permit jurors to give evidence on this subject. Annot., "Quotient Verdicts," 8 A.L.R.3d 335, § 16 (1966); 89 C.J.S. *Trial* § 523 (1955); 76 Am.Jur.2d *Trial* §§ 1137, 1221 (1975). More leniently, Utah R.Civ.P. 59(a)(2) permits such proof by jurors, but in its references to proof by the affidavit of a single juror it uses the permissive "may." The trial court's privilege to disbelieve affidavits impeaching a verdict was the apparent basis of decision in *Pence v. California Mining Co.*, 27 Utah 378, 75 P. 934 (1904), and *Archibald v. Kolitz*, 26 Utah 226, 72 P. 935 (1903). I believe that privilege extends to disbelieving conclusory assertions in the affidavit of a single juror—even though

unopposed—and thus denying the new trial as was done here.

Even if the trial court is not free to disbelieve the unopposed conclusory affidavit of a single juror, the court should not be compelled to grant a new trial on that basis, as the majority apparently requires. The affiant should at least be subject to oral examination and cross-examination before his or her recollections are used to impose the costly remedy of a new trial. As the court held in *Clary v. Blondel,* 178 Iowa 101, 103, 159 N.W. 604 (1916), the oral examination of an affiant who claims advance agreement to a quotient verdict "is always desirable ... for usually affidavits are prepared by those interested on one side or the other, and jurors do not always examine the language to which their names are attached as critically as their importance would seem to exact."

The give-and-take that leads to consensus is vital to the functioning of the jury system. A verdict resulting from that system should not be subject to invalidation upon the unexamined conclusion of a single participant, especially as regards a matter so subject to contrary interpretation as whether the jurors agreed in advance to be bound by the outcome of an averaging process.